[No. A102255. First Dist., Div. One. Oct. 31, 2003.]

TEAMSTERS LOCAL 856 et al., Plaintiffs and Respondents, v.
PRICELESS, LLC, et al., Defendants and Appellants.

**COUNSEL**

Gray, Cary, Ware & Freidenrich, Edward P. Davis, Jr., Kathryn E. Karcher, James M. Chadwick and Nicole P. Dogwill for Defendants and Appellants.

Larry E. Anderson, City Attorney for Defendant and Appellant City of Burlingame.

Aaronson, Dickerson, Cohn & Lanzone, Robert J. Lanzone and Jean B. Savaree for Defendant and Appellant Cities of Belmont, Foster City and San Carlos.

Davis Wright Tremaine, Kelli L. Sager, Susan E. Seager and Thomas R. Burke for The California Newspaper Publishers Association et al., as Amicus Curiae on behalf of Defendants and Appellants.

Moskowitz, Brestoff, Winston & Blinderman, Barbara S. Blinderman and Dennis A. Winston for James Lissner and Courier Graphics Corporation (dba Claremont Courier), as Amicus Curiae on behalf of Defendants and Appellants.

Beeson, Tayer & Bodine and Andrew H. Baker for Plaintiffs and Respondents Teamsters Local 856, AFSCME Local 829 and AFSCME Local 2190.

Van Bourg, Weinberg, Roger & Rosenfeld, W. Daniel Boone, Vincent A. Harrington, Jr. and M. Suzanne Murphy for Plaintiff and Respondent Services Employees International Union Local 715, AFL-CIO.

Best, Best & Krieger, Jeffrey V. Dunn, Sonia R. Carvalho and Mark D. Servino for City of Claremont as Amicus Curiae on behalf of Plaintiffs and Respondents.

Castle, Petersen & Krause, Gregory G. Petersen, Cherry-Marie D. Rojas and Micah S. Lachtman for City of Claremont Management Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

## Opinion

**MARCHIANO, P. J.**—Priceless, LLC, a limited liability corporation that operates newspaper companies as the "Daily News" in various cities throughout the San Francisco Bay Area, appeals from a preliminary injunction that allowed the release of information regarding public employee salaries in various cities, but limited the form of the information to prohibit disclosure of compensation received by individually identifiable employees.

The narrow issue presented on appeal is whether the trial court properly issued the preliminary injunction withholding the names of individual public employees pending resolution of the newspaper's request for detailed employee salary information from local governmental entities.

We affirm the order granting the preliminary injunction in light of the evidence submitted to the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In February of 2003, Christina Bellantoni, a reporter for the Daily News, sent requests for records pursuant to the California Public Records Act (CPRA) to numerous San Francisco Bay Area cities. (Gov. Code, § 6250 et seq.)[1] The letters cited the CPRA, and stated: "Specifically, I would like the

---

[1] Except where otherwise indicated, all statutory references are to the Government Code.

names, titles and W2 wages of all [city] employees for the 12 months ending Dec. 31, 2002. By W2 wages, I mean all compensation paid to these employees during the year, including regular hours, overtime, bonuses, etc."[2]

According to Bellantoni's declaration, a number of cities provided the records as requested, but: "most cities, including the Cities involved in this litigation, either indicated that they would need additional time to respond or provided inconclusive responses."

On March 13, 2003, counsel for Teamsters Local 856 notified the Daily News that it and other unions that represented municipal employees intended to seek to enjoin disclosure of the individual employees' names and salaries to the Daily News. Following this notice, counsel for the Daily News spoke with city attorneys who indicated they would now withhold information pending resolution of the action.

On March 17, 2003, Teamsters Local 856 and American Federation of State, County & Municipal Employees (AFSCME) Locals 829 and 2190 (the Unions) filed a complaint for injunctive relief naming as defendants the cities of Atherton, Burlingame, Foster City, San Carlos and Belmont (the Cities) and the Daily News.[3] The complaint alleged that release of the employees' names would be an invasion of privacy and would cause irreparable harm. It also alleged that release of the information regarding peace officer employees would violate Penal Code section 832.7. The complaint sought preliminary and permanent injunctions.

On March 19, 2003, the Unions filed a motion for a preliminary injunction. The motion was supported by two declarations from union officials stating that, to their knowledge, the salary of individual employees was maintained as confidential information by the Cities. The third supporting declaration was from a law clerk at the office of the Unions' counsel, stating that as of March 14, each of the Cities was prepared to provide the first initial and last name of each employee with his or her corresponding 2002 base earnings, overtime earnings and bonus earnings. The City of Atherton was also prepared to provide that information for police officers.

---

[2] The Daily News explains in its reply brief that although its request specified "W-2 wages," it was not actually seeking disclosure of confidential information on federal W-2 forms, but only of compensation paid, including regular hours, overtime and bonuses. When this matter is heard on the merits in the trial court, the Daily News will have the opportunity to present evidence regarding the exact nature of the information it seeks.

[3] Service Employees International Union Local 715, AFL-CIO, intervened as a plaintiff with the agreement that its represented employees in San Mateo and East Palo Alto would be bound by any decision, but agreed to file no additional pleadings. After the preliminary injunction order was filed and after the notice of appeal was filed, the parties stipulated that the San Jose Mercury News could intervene and agree to be bound by the decision, but would not file additional pleadings in the trial court pending resolution of the appeal.

The Daily News filed opposition to the request for a preliminary injunction, arguing that the items of information requested were public records, were not exempt from the provisions of the CPRA and that disclosure would not infringe on any privacy interest.[4] The Daily News attached a copy of a federal administrative regulation regarding disclosure of personnel information, an opinion of a superior court in Bakersfield, and copies of the plaintiff Unions' collective bargaining agreements.

The City of Burlingame filed a response, accompanied by the declaration of the City Attorney and a copy of the city's administrative procedure regarding release of information. The policy stated that credit information requests are referred to the payroll or personnel department which will supply information regarding date of hire, position titles and earnings information when permission is given by the employee. Other employee information is not given out. That city's memorandum of understanding (MOU) with the firefighter's union was also attached to the city attorney's declaration. The MOU stated that the city would release information only upon "proper identification of the inquirer and acceptable reasons for the inquiry." Such information is limited to verification of employment, length of employment and verification of salary if the inquirer first indicates the correct salary. "Release of more specific information may only be authorized by the employee." Finally, the city attached a page from instructions for forms W-2, published by the United States Department of the Treasury, which stated that information provided on form W-2 was confidential, subject to specific, limited disclosure.

The trial court heard argument on the preliminary injunction on April 2, 2003. When the court noted that some objections to the declarations submitted by plaintiffs would be sustained, the city attorneys agreed to a stipulation that in each of the involved cities, the salary information of individual employees is kept confidential as a part of the personnel file. Defendant Daily News objected only to relevance and the court accepted the stipulation. No other evidence was presented by the plaintiffs and there was no evidentiary ruling on the declarations.

After hearing argument, the court reversed its tentative decision to deny the injunction outright and ordered release of the requested information without the names of the individual employees. The court's opinion stated: "during the pendency of this action, Defendant Cities . . . are hereby restrained and enjoined, . . . from . . . releasing [to the Daily News] . . . records containing

---

[4] The Daily News also demurred and answered the complaint and filed a cross-complaint based on the provisions of the CPRA, seeking the identity and compensation paid to public employees of the Cities. Further action on the CPRA cross-complaint and the demurrer was stayed by stipulation pending this appeal of the preliminary injunction.

salary, overtime, bonus or any other compensation information, in any such form that discloses such compensation received by individually identifiable employees with respect to any of the defendant Cities' employees employed in any bargaining unit represented by any of the plaintiff Unions . . . ." The court also ordered release within 20 days of all information not prohibited by its order. The court expressly found: "a reasonable expectation of privacy in the employees based on the confidentiality policies of the City and a failure to articulate or show the public interest in the disclosure of information linked to individuals." On April 9, 2003, the Daily News appealed.[5]

In compliance with the court's order, the defendant Cities released detailed listings of salaries, itemized as to each city employee, but identifying the particular employee only by job title. For example, the City of San Carlos listed the total salary, bonus and overtime paid to: "Administrative Assistant–1." It listed the same information for "Administrative Assistant–2" and "Administrative Assistant–3," and so on for all employees in that job classification. Other cities submitted similarly detailed information for each city employee, omitting only the names.

## DISCUSSION

On appeal, the Daily News argues that disclosure is mandated, no statutory exemption applies and that the trial court erred in placing a burden on it to justify its request for public information. The Unions respond that the constitutional privacy interests of its represented employees must be weighed against the public's right to know the workings of government and that the trial court properly adjusted those competing interests by withholding the individual's names pending a trial on the merits.[6]

We emphasize that the only question properly before us at this time is whether the trial court erred in issuing the preliminary injunction. We are

---

[5] On May 1, 2003, the Daily News filed an "Amended Notice of Appeal" that stated that the San Jose Mercury News, Inc., had been granted leave to intervene in the action after the notice of appeal was filed, and was joining in the appeal, presumably as another media appellant. It has not filed a brief, but has elected to be bound by the outcome.

[6] We note that there is no express authority for a third party to bring an action to preclude a public agency from disclosing documents under the CPRA. The Supreme Court in *Filarsky v. Superior Court* (2002) 28 Cal.4th 419 [121 Cal.Rptr.2d 844, 49 P.3d 194] (*Filarsky*) held that a city could not seek declaratory relief to determine its own obligation to disclose records, but declined to determine whether a third party could preclude disclosure. (*Id.* at p. 431.) The court noted that similar actions allowed in federal courts were based expressly on a federal statute authorizing such judicial review. This issue was raised only in a single amicus curiae brief, and even that entity urged us to disregard the procedural point, noting that the issues are fully briefed and that dismissing the action now would only prolong the delay. The Daily News has agreed to proceed in the manner initiated by the Unions, and by this action has waived any objection to the posture of the action. Although we will decide the appeal, we express no opinion on the propriety of the third party action.

reminded by the Cities involved in this case that they seek to assert the rights of all city employees, and not just the union employees that are subject to the preliminary injunction. In addition, amicus curiae California Newspaper Publishers Association requested that we take judicial notice of additional items of evidence that were not presented to the trial court. That request demonstrates the existence of additional evidence that may be relevant at the trial on the merits. We are not now deciding the merits of the question of whether the Cities must release salary information in a form that identifies the salaries paid to specific individual employees. Resolution of that issue involves a balancing test that will benefit from a complete presentation of evidence and argument.

*Standard of Review*

The parties dispute the appropriate standard of review. The Daily News argues that we should review the preliminary injunction independently as an order under the CPRA, and apply the substantial evidence standard to findings of fact.[7] The Unions argue that the order is just an ordinary preliminary injunction, reviewable only for an abuse of discretion. Despite this argument, the Unions concede that interpretation of the CPRA is a question of law subject to de novo review.

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] ' " '[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' " ' [Citations.]" (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206 [211 Cal.Rptr. 398, 695 P.2d 695].)

"Generally, the ruling on an application for a preliminary injunction rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a showing that it has been abused. [Citation.]" (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840] (*Cohen*).) "However, where as here the factor of the ' " 'likelihood of prevailing on the merits' " ' depends upon a question of

---

[7] This action is an appeal from an order granting a preliminary injunction and not an action under the CPRA. An order directing disclosure of public records under the CPRA, or supporting an entity's decision refusing disclosure, is not appealable but is immediately reviewable by petition for extraordinary writ. (Gov. Code, § 6259, subd. (c); *Filarsky, supra,* 28 Cal.4th at pp. 426–427 [purpose of requiring writ review is to minimize delay of disclosure].)

law or the construction of a statute, rather than upon evidence to be introduced at a subsequent full trial, the standard of review is whether the superior court correctly interpreted and applied the law, which we review de novo." (*People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1194 [128 Cal.Rptr.2d 861].)

In this case, the question of whether the Unions are likely to prevail on the merits turns on a construction of CPRA and its exemptions, as applied to facts regarding city confidentiality policies that are essentially undisputed at this point in the litigation. Introduction of additional evidence at the trial may shift the balance, but at this stage of the proceedings, the majority of the issues raised involve questions of law that we review de novo. (*Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512 [21 Cal.Rptr.2d 578].)[8]

*The Governing Statute*

■ The CPRA is weighted in favor of disclosure of public records, but it does not attempt to uproot constitutional concerns of individual privacy. Section 6250 provides: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." "At the heart of the CPRA is the declaration that 'every person has a right to inspect any public record, except as hereafter provided.' (§ 6253, subd. (a).) In other words, all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 [19 Cal.Rptr.2d 882, 852 P.2d 377].) Section 6255 places the burden of justification on the agency seeking to withhold disclosure. (See, e.g., *New York Times Co. v. Superior Court* (1990) 218 Cal.App.3d 1579 [268 Cal.Rptr. 21] [names of customers subject to disclosure where water district failed to carry burden of showing privacy right of customers who exceeded water allocation outweighed public's right to be informed].)

■ Despite the focus on disclosure, the Legislature expressly recognized the importance of individual privacy interests. "The objectives of the Public Records Act thus include preservation of islands of privacy upon the broad seas of enforced disclosure." (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 653 [117 Cal.Rptr. 106] (*Black Panther Party*).) Citizens do not surrender their constitutional right to privacy merely because their names appear in government records. (See, e.g., *Hill v. National Collegiate Athletic*

---

[8] We are not deciding "all the news that's fit to print," the phrase coined by publisher Adolph S. Ochs for the New York Times editorial page of October 25, 1896. We are only deciding the issues in the unique procedural posture of this case.

*Assn.* (1994) 7 Cal.4th 1 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*) [analyzing scope of right to privacy]; *City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1017 [88 Cal.Rptr.2d 552] (*City of San Jose*) [CPRA analysis barred newspaper's CPRA request for disclosure of names and addresses of private citizens who complained of airport noise].)

■ Consequently, section 6254 lists a number of exceptions to the disclosure requirements of the CPRA, including subdivision (c), which provides: "Nothing in this chapter shall be construed to require disclosure of records that are any of the following: . . . (c) [p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." This statutory exception is permissive, meaning that public agencies may, but are not compelled to refuse to disclose the listed items. (*Black Panther Party, supra,* 42 Cal.App.3d at p. 656.)

■ Even if a particular item is not specifically exempt from disclosure, section 6255 establishes a catch-all provision that permits withholding of a record if the agency can justify nondisclosure "by demonstrating that . . . on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."

A claim that disclosure of a particular item violates an individual's constitutional right to privacy is analyzed under essentially the same balancing test as is used in evaluating the section 6255 catch-all exemption.[9] (*Braun v. City of Taft* (1984) 154 Cal.App.3d 332, 347 [201 Cal.Rptr. 654] (*Braun*).)

*Privacy Rights of Public Employees*

The Daily News argues that by accepting public employment, an individual loses "some anonymity." (*Braun, supra,* 154 Cal.App.3d at p. 347.) It contends that how a city spends the public's money is a critical public concern that must be available for public scrutiny. (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 955 [196 Cal.Rptr. 45] [Brown Act prohibits closed city council sessions for purpose of setting salaries of officers and employees].)

Based on this loss of anonymity, the Daily News reasons that public employees, unlike their private counterparts, have no legally recognized

---

[9] The Daily News argues that the trial court impermissibly imposed a burden on it to justify disclosure. This argument is based on the court's language finding "a reasonable expectation of privacy in the employees based on the confidentiality policies of the City and a failure to articulate or show the public interest in the disclosure of information linked to individuals." This passage from the order merely indicates the court had performed the balancing test necessary to evaluate a claim that the interest in nondisclosure clearly outweighs the public's interest in disclosure. The Daily News was not required to demonstrate a particular reason or justification for disclosure.

privacy right to control dissemination of their individually identified salary information. It relies primarily on *Braun, supra,* 154 Cal.App.3d 332, *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 775 [192 Cal.Rptr. 415] *(San Gabriel Tribune),* and *Register Div. of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 909 [205 Cal.Rptr. 92] *(Register Div.).* ██ After reviewing the cases cited by all sides, we conclude that public employees do have a legally protected right of privacy in their personnel files and that the trial court did not err, in light of the facts before it at this stage of the litigation, in concluding that the employees' expectation was reasonable.

The cases relied on by the Daily News do not resolve the issue of public disclosure of individually identifiable salary information. Although *Braun, supra,* 154 Cal.App.3d 332, allowed such disclosure, the court expressed strong reservations about the action taken in that case. *Braun* concerned a city councilman who was investigating purported improprieties in the appointment of a city administrator. The councilman sought disclosure of documents appointing and rescinding the appointment of the administrator and a salary card that had been altered. The councilman subsequently released the documents and was censured for this action.

The Court of Appeal expressed concern that the administrator's name, address, home telephone number and other personal information had not been deleted from the document, but declined to reverse the lower court's determination that the documents were public and not confidential personnel records. *(Braun, supra,* 154 Cal.App.3d at pp. 344–345.) The court noted that a salary classification was public information, and inexplicably stated: "Few persons would find interest in Polston's social security and credit union numbers, or birth date." *(Id.* at p. 345.)

*Braun* was decided before the spread of identity theft, and the current widespread and serious concern for the privacy of an individual's financial data. Identity thieves today would have a great deal of interest in an individual's Social Security number and other identifying financial data. (See, e.g., Comment, *Financial Institutions' Duty of Confidentiality to Keep Customer's Personal Information Secure from the Threat of Identity Theft* (2001) 34 U.C. Davis L.Rev. 1077 [discussing growing crime of identity theft, and citing Sabol, *The Identity Theft and Assumption Deterrence Act of 1998—Do Individual Victims Finally Get Their Day in Court?* (1999) 11 Loyola Consumer L.Rev. 165, 166, noting that Social Security numbers are most important forms of information because they often provide access to

bank accounts and other private information].)[10] The *Braun* court's indication that it would have upheld a trial court's decision to excise the personal information is more significant than its outdated comment regarding lack of interest in individual financial data.

Unlike this case, the *Braun* case concerned the investigation of a single individual where disclosure of the individual's name was not severed from the disclosed information itself. Furthermore, that court was upholding the lower court's determination to approve of the councilman's disclosure of the information, while indicating it also would have upheld an order redacting the personal information. Here, wholesale disclosure of every public employee's name and salary history are sought and the names have been redacted by the trial court's order.

The Daily News cites two other cases that do not involve salaries of public employees. Both cases concern information that was voluntarily submitted to a public entity in return for a benefit from the entity. *San Gabriel Tribune* concerned financial data provided to a city by a waste disposal company to support a request for a rate increase. The reviewing court determined that because the company was providing a public service, the city's assurances of confidentiality were not sufficient to turn a public record into a private one. (*San Gabriel Tribune, supra,* 143 Cal.App.3d at p. 775.) A pivotal concern of the *San Gabriel Tribune* court was that suppression of the information would allow the city to set rates for a public service in secret. (*Id.* at p. 776.)

In the second case, *Register Div., supra,* 158 Cal.App.3d 893, a county resisted disclosure of the contents of the file of a secret settlement agreement reached with a jail inmate who had filed a claim for injuries resulting from a jailhouse assault, arguing that it had promised confidentiality. The court noted that the inmate had waived his privacy claim by voluntarily submitting such items as his medical records in support of his claim. The settlement records were used by the public entity to calculate and pay the claim and could not remain secret. The public interest in overseeing these government actions properly prevailed over the privacy right of an individual who had already disclosed the information.

The situation in this case is markedly unlike *San Gabriel Tribune* and *Register Div.* because the Unions here do not seek to prevent disclosure merely because the cities promised confidentiality. We agree that a mere

---

[10] We note that Governor Davis recently signed Senate Bill No. 1 (2003–2004 Reg. Sess.), the California Financial Information Privacy Act, on August 27, 2003 to control a financial institution's ability to distribute a consumer's nonpublic, personally identifiable financial information. (Fin. Code § 4050 et seq.; <http://www.leginfo.ca.gov> [as of 10/31/03].) Concern for financial privacy is a compelling issue in today's world.

promise of secrecy cannot always shield a public record from disclosure.[11] In this case, the Unions, on behalf of the employees, were not relying on the policies of the cities for the purpose of claiming secrecy based on a promise. Rather, the Unions were supporting their claim that the individual public employees have a reasonable expectation of privacy based on the past practices of the employing cities.

■ The cases cited by the Daily News do not support the argument that individual employees have no privacy interest in their personally identified salary information. Our Supreme Court has recognized financial affairs as an aspect of the personal right to privacy: "In any event we are satisfied that the protection of one's personal financial affairs and those of his (or her) spouse and children against compulsory public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within that penumbra of constitutional rights into which the government may not intrude absent a showing of compelling need and that the intrusion is not overly broad." (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 268 [85 Cal.Rptr. 1, 466 P.2d 225] [reviewing constitutionality of broad financial disclosure law applicable to public officers and employees].)

■ In *Hill, supra,* 7 Cal.4th 1, the court set out the elements of a cause of action for invasion of the right to privacy guaranteed by the California Constitution. (*Id.* at pp. 32–37.) The court stated that a plaintiff must show (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) a serious invasion of the privacy interest. (*Id.* at pp. 35–37.) In explaining these three factors, the court stated that one class of legally protected privacy interest is informational privacy, or the right to preclude dissemination of personal, confidential information. (*Id.* at p. 35.) That entitlement is the fundamental right at issue in this case.

■ The CPRA itself recognizes the right of privacy in one's personnel files by virtue of the exemption in section 6254, subdivision (c). The CPRA,

---

[11] An appropriate assurance of confidentiality may tip the scales in favor of privacy, depending on the circumstances. (See, e.g., *Johnson v. Winter* (1982) 127 Cal.App.3d 435 [179 Cal.Rptr. 585] [recognizing need to protect confidential sources of information on deputy sheriff applicants].)

with its privacy protection, is modeled upon the federal Freedom of Information Act (FOIA) and the federal judicial construction of that statute is useful in construing the CPRA. (*City of San Jose, supra,* 74 Cal.App.4th at p. 1016.)[12]

█ Federal cases construing the similar federal provision have found a reasonable expectation of privacy in one's personnel files. "A person's interest in preserving the confidentiality of sensitive information contained in his personnel files has been given forceful recognition in both federal and state legislation governing the recordkeeping activities of public employers and agencies. [Citations.]" (*Detroit Edison Co. v. NLRB* (1979) 440 U.S. 301, 319, fn. 16 [59 L.Ed.2d 333, 99 S.Ct. 1123] [noting that federal Privacy Act bans unconsented disclosure of employee records].)

In *United States Department of State v. Washington Post Co.* (1982) 456 U.S. 595 [72 L.Ed.2d 358, 102 S.Ct. 1957], the Supreme Court made it apparent that items to be protected within personnel files are not just the intimate private details of personal decisions. The court stated that the intent of Congress in enacting the exemption was that it: ". . .'cover detailed Government records on an individual which can be identified as applying to that individual.' [Citation.] When the disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." (*Id.* at p. 602.)

In discussing the general attributes of a personnel file, the United States Supreme Court has stated that an individual's personnel file generally contains " 'vast amounts of personal data,' " including "where he was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, evaluations of his work performance." The court noted that access to personnel files is "drastically limited . . . only to supervisory personnel directly involved with the individual . . . ." (*Department of the Air Force v. Rose* (1976) 425 U.S. 352, 369, 377 [48 L.Ed.2d 11, 96 S.Ct. 1592] [concerning records of air force cadets whose military education was publicly financed].) The federal courts recognize that information from a personnel file that applies to a specified individual raises significant privacy concerns.

Regarding the element of a reasonable expectation of privacy, the court in *Hill* stated that: "A 'reasonable' expectation of privacy is an objective

---

[12] The text of the comparable exemption in the FOIA provides as follows: "This section does not apply to matters that are [¶] . . . [¶] (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ." (5 U.S.C.A. § 552(b)(6).)

entitlement founded on broadly based and widely accepted community norms." (*Hill, supra,* 7 Cal.4th at p. 37.) The express identification in the CPRA of personnel files as an exempt area of private information demonstrates a similar concern for confidentiality.

In this case, the court accepted a stipulation that employees' salary details are kept confidential in personnel files. This unchallenged fact supports the trial court's recognition that a privacy interest was at stake and that the expectation of privacy was reasonable under the circumstances.[13] We conclude that the Unions satisfied the first two *Hill* factors by showing the existence of a legally protected privacy interest and, in light of the facts before the trial court, there is a reasonable expectation of privacy in the individually identifiable information sought.

Before we turn to a consideration of the final factor in the balancing test, we must address appellants' contention that the information sought about these public employees is actually a part of an employment contract, which is specifically identified as a public record that must be disclosed.

*Section 6254.8—Public Employee Employment Contracts*

The Daily News argues that section 6254.8 mandates disclosure of the information sought. Section 6254.8 provides: "Every employment contract between a state or local agency and any public official or public employee is a public record which is not subject to the provisions of Sections 6254 [exemption for personnel files] and 6255 [catch-all exemption]." The term "employment contract" is not defined. Significantly, the statute does not refer to other documents that may reflect a term normally found in an employment agreement.

Despite this lack of reference to other evidence of individual items or terms of an employment contract, the Daily News contends that a public employee's name and compensation are the kind of information that would be found in an employment contract and are therefore subject to disclosure without regard to any exemption. It relies on opinions of the California Attorney General regarding the importance of the public's right to know how its business is being conducted and the argument that any information relating to public employment is a public record that is not subject to exemption.

Little authority is available regarding the Legislature's intent in enacting the section 6254.8 exemption. Of the Attorney General's opinions cited, one

---

[13] The Daily News argues that it did not join the stipulation, but the transcript of the hearing indicates that the court accepted the stipulation from the City Attorneys, and asked counsel for the Daily News if he objected. Counsel stated: "I don't object to the stipulation, Your Honor, just to the relevance." The court then accepted the stipulation.

concerns disclosure of the name and salary of retired public employees. That opinion predates the enactment of the CPRA and the addition of the right of privacy to article I, section 1 of the California Constitution. (25 Ops.Cal.Atty.Gen. 90 (1955); *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 424 [66 Cal.Rptr.2d 210, 940 P.2d 797] [added by initiative adopted Nov. 7, 1972].)[14] Because its analysis is outdated, that opinion is of no assistance here.

Another opinion that cites section 6254.8 determined that the salary of a public hospital administrator is part of his employment contract and should be disclosed by a public agency even though the salary was set in a closed executive session. (63 Ops.Cal.Atty.Gen. 215 (1980).) But that opinion concerns an administrator and not a regular public employee.

We are aware of only one case discussing section 6254.8, *Braun, supra,* 154 Cal.App.3d 332. The *Braun* court, without analysis, characterized letters appointing a city administrator and rescinding the appointment as manifesting his employment contract and therefore properly disclosed. (*Braun, supra,* at p. 344.) The issue of whether the name of an ordinary public employee, coupled with detailed salary information, is properly included in the Legislature's description of an employment contract under section 6254.8, was not discussed in *Braun* or any other cited authority.

The Unions have supplied documents indicating the legislative intent behind the enactment of section 6254.8.[15] The legislative history of the employment contract provision, especially when considered in light of the general law regarding public employees, supports the Unions' construction of the statute. The Unions argue that the legislative documents show the Legislature intended that the section apply only to high-level state and local officials who are, in some instances, employed pursuant to individual contracts, and not to regular civil service employees.

An Assembly committee analysis of Senate Bill No. 1529 and a letter from the author note that the bill was introduced as a result of a complaint regarding the employment contract of a high university official. The analysis notes the intent to limit the application to high public officials, but expresses

---

[14] The CPRA was originally enacted in 1968. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].)

[15] We granted the Unions' request for judicial notice of, inter alia, (1) all versions of Senate Bill No. 1529 (Nejedly) (1973–1974 Reg. Sess.) and proposed amendments; (2) the Senate Final History from the 1973–1974 Regular Session; (3) analysis of Senate Bill No. 1529 prepared for the Senate Committee on Governmental Organization; (4) analysis of Senate Bill No. 1529 by the Legislative Analyst, March 4, 1974; (5) analysis of Senate Bill No. 1529 prepared for the Assembly Committee on Employment and Public Employees; and (6) Office of Senate Floor Analyses, third reading analysis of Senate Bill No. 1529.

concern that the lack of a definition of "employment contracts" could be construed to impact regular civil service employees. The analysis also notes that the State Personnel Board reported that no civil service employees were covered by employment contracts. (Assem. Com. on Employment and Public Employees, Analysis of Sen. Bill No. 1529 (1973–1974 Reg. Sess.) as amended Mar. 19, 1974, p. 1.) The Assembly analysis states that the State Personnel Board does not consider any civil service appointment document to be an "employment contract." (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1529 (1973–1974 Reg. Sess.) p. 1.)

Earlier versions of the bill analysis stated that the State Personnel Board considered a civil service appointment document to be an employment contract. (Legis. Analyst, analysis of Sen. Bill No. 1529 (1973–1974 Reg. Sess.) p. 1.) An amendment was added that excepted state civil service appointment documents and stated: "For the purposes of this section, a state civil service appointment document is not an employment contract." (Author's Amendment 1, Mar. 5, 1974.) The University of California objected to the amendment because its employees were not subject to civil service and might be treated differently from other public employees. The University urged uniform application to all public employees. (Material from the legislative file of Sen. Nejedly on Sen. Bill No. 1529.) The language referencing civil service was then deleted. (Assem. Amend. to Sen. Bill No. 1529 (1973–1974 Reg. Sess.) Mar. 19, 1974.)

The State Personnel Board submitted an enrolled bill report explaining that it withdrew its opposition to the bill based on the author's assurance that there was no legislative intent to affect civil service employees. (State Personnel Bd., Enrolled Bill Rep. on Sen. Bill No. 1529 (1973–1974 Reg. Sess.), Sept. 10, 1974.) Also, the Legislative Counsel submitted a statement to the bill's author indicating that the bill was intended to apply to contracts such as the one described in an attached newspaper article that was critical of the withholding of the employment contract of the President of the University of California. (Material from the legislative file of Sen. Nejedly on Sen. Bill No. 1529.)

The legislative history explains that the State Personnel Board dropped its opposition because of assurances from the bill's author. The notation by the Legislative Counsel that the bill was intended to affect employment contracts such as the contract of the President of the University of California further indicates the intended application of the statute.

We find it instructive to note that the employment of most classified civil service employees is by statute, rather than contract. "In California

public employment is held not by contract, but by statute. (*Miller v. State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970] (*Miller*).) [Citation omitted.] Relying on *Miller*, our Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing. [Citation.] This same general principle of law applies to civil service and noncivil service public employees alike. [Citation.]" (*Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 164 [95 Cal.Rptr.2d 10].)

 The legislative history, when viewed with common sense and in light of the law of public employment, supports the conclusion that employees who are not parties to employment contracts have no contracts to disclose. Furthermore, the cities in this action have already agreed to disclose position titles, base salaries, bonuses and other details of payment to the public employees. Whatever it means to disclose the employment terms of these employees who do not have formal contracts, section 6254.8 does not mandate that an individual's name must be linked to salary information.

*Balancing Privacy Against the Right to Know—Serious Invasion of Privacy*

The third element set out in *Hill, supra,* 7 Cal.4th 1, addresses the heart of the privacy interest. This element involves an assessment of the extent and gravity of the privacy invasion under consideration. This assessment is similar to the balancing test set out in section 6255 that weighs privacy interests against the public right to disclosure. Section 6255, subdivision (a) provides: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."

Although the motive of the requesting party is not a concern in the CPRA context, we are aware of the fact that disclosure of the financial information sought by the Daily News in this case means the information is public and available to anyone, regardless of motive, including telemarketers, creditors and identity thieves. (*City of San Jose, supra,* 74 Cal.App.4th at p. 1018.) For that reason, we have carefully analyzed the claims of individual privacy.

 When a public entity resists disclosure of an item in a personnel file, the court has the responsibility to balance the public interest in disclosure against the individual privacy interest at stake. A part of that balancing test is the determination of the extent to which disclosure of the requested item of information will shed light on the public agency's performance of its duty.

"Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the purpose of the FOIA]. That purpose,

however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." (*Department of Defense v. FLRA* (1994) 510 U.S. 487, 495–496 [disclosure of employee addresses would not further the public's right to be informed about "what their government is up to"].) A court must evaluate "whether disclosure would serve the legislative purpose of ' " 'shed[ding] light on an agency's performance of its statutory duties.' " ' [Citation.] Where disclosure of names and addresses would not serve this purpose, denial of the request for disclosure has been upheld." (*City of San Jose, supra,* 74 Cal.App.4th at p. 1019.)

Both the Daily News and the Unions cite federal cases that treat disclosure of identifiable employee salary information in different ways. For example, the Daily News refers to *Tripp v. Department of Defense* (D.C. 2002) 193 F.Supp.2d 229 as being a case that establishes a public employee's lack of any viable privacy interest in disclosure of name and salary. In that case, plaintiff Linda Tripp, a former federal employee who had been the subject of many news stories, filed an action against the government for improperly disclosing information from her employment application for a new position. However, the plaintiff did not pursue a claim related to release of salary information. (*Id.* at p. 235.) Relying on older cases, that court stated in dicta that: "The Court agrees that the names, titles, salaries, and salary-levels of public employees are information generally in the public domain." (*Id.* at p. 236.) The court's ultimate conclusion was that the information disclosed was not "about" Tripp, but was only the salary level of the position for which she applied. The *Tripp* case did not consider a challenge to the release of current individually identified salary data.

Similarly, the court in *Nat. Western Life Ins. Co. v. United States* (N.D.Tex. 1980) 512 F.Supp. 454, 460–461, stated that postal employees have no expectation of privacy respecting their names and duty stations. That court relied on the notion that only extremely personal or embarrassing details were subject to exclusion from the reaches of the federal FOIA. We do not believe that aspect of *Nat. Western Life* survives the United States Supreme Court's analysis in *U.S. Dept. of Justice v. Reporters Committee* (1989) 489 U.S. 749 [103 L.E. 2d 774, 109 S.Ct. 1468] (*Reporters Committee*) (disclosure of contents of FBI rap sheet is unwarranted invasion of privacy); see also *Hill, supra,* 7 Cal.4th at p. 35 [two legally protected privacy interests under California Constitution are informational privacy and autonomy].)[16]

---

[16] In *Hill,* our Supreme Court explained that autonomy privacy involves an individual's control over personal decisions and activities without interference, while informational privacy concerns the right to prevent dissemination of sensitive or confidential information. (*Hill, supra,* 7 Cal.4th at p. 35.)

In *Reporters Committee*, the high court reviewed the basis of the right to privacy and concluded that the right implicated is the ability to control disclosure of information about oneself. Based on this conclusion, the *Reporters Committee* court reasoned that information to be released when a privacy interest is impacted must pertain to the government's performance of its duties. When the name of an individual reveals nothing about the agency, it should not be made public. (489 U.S. at p. 766, fn. 18.)

Federal courts have not produced a unanimous view of when the names and other personnel information of public employees may be disclosed, but many cases refuse to disclose individually identifiable information when no government purpose is served. For example, in *Campbell v. United States Civil Service Commission* (10th Cir. 1976) 539 F.2d 58, the court declined to order disclosure of an appendix containing names and addresses of public employees who were over-classified in a report on government personnel management. The court determined that disclosure of the information would be "a serious invasion of privacy" and upheld the lower court's deletion of that information. The court noted that the public interest in efficient government operations was better served by disclosure of general practices and that disclosing specific individual problems advanced no public interest. (*Id.* at p. 62.)

In *Sheet Metal Workers v. Dept. of Veterans Affairs* (3d Cir. 1998) 135 F.3d 891 (*Sheet Metal Workers*), the court reversed a lower court's order disclosing information about a government contractor's employees. After reviewing the Supreme Court's decision in *Reporters Committee*, the Third Circuit reevaluated its own prior decisions that had authorized disclosure of personal identifiers and recognized a valid privacy interest on the part of the employees of the government contractor. The court stated: "The release of names, addresses, and similar 'private' information reveals little, if anything, about the operations of the Department of Veterans Affairs." (*Sheet Metal Workers*, at p. 903.)[17]

The Unions have presented persuasive case law that refuses to mandate disclosure of public employee salaries linked to the specific individual by name when no valid purpose is served. ██ The critical point we extract from these federal cases is that financial privacy is a recognized interest and that each case is decided according to its facts after a careful balancing of the public interest in nondisclosure of individuals' names against the public interest in disclosure of that information.

---

[17] The opinion in *Sheet Metal Workers, supra,* 135 F.3d 891, significantly undermines the contrary conclusion in an earlier district court case cited by the Daily News, *Sheet Metal Workers v. U.S. Dept. of Vet. Affairs* (E.D.Pa. 1995) 940 F.Supp. 712, which relied on the Third Circuit authority that was reevaluated in the 1998 Court of Appeals case.

The evidence presented to the trial court in this case to support nondisclosure included declarations and portions of city policy manuals and union agreements indicating that employee salary data is kept in confidential personnel files. The trial court relied on this information to find that employees had a reasonable expectation of privacy in salary information that identified them by name. The court recognized that there was no evidence that revealing the individuals' names would shed light on government conduct. The court narrowly tailored its preliminary injunction to allow release of all requested salary materials but ordered deletion of individual names during the pendency of this action.

The public interest in disclosure asserted by the Daily News in this case is the right to know how public money is spent and how much government employees at various levels earn. The Daily News sets out several hypothetical situations designed to show how disclosure of the names of the specific employees serves the public interest. For example, it argues that without a name, the public could not explore the reason for a transit supervisor earning more than the Governor of California. It contends that names are needed to know why a city had overruns of $800,000 in police and fire overtime. It speculates that improper relationships between the city council and the individual employees may explain the errant compensation level.

But none of these speculative possibilities present a relationship between indiscriminate, mass disclosure of all employee names with salaries and the public's right to know how public funds are spent. The name of a particular city employee does not tend to shed light on the city's performance of its duties. The release of salaries, broken down by position, title, base salary, overtime and bonus compensation serves the public purposes that appellants urge at this stage of the proceedings. Appellants are not precluded from presenting additional evidence of why the names of employees are needed for their purposes.

We note again that this appeal is from a preliminary injunction. ▮ A preliminary injunction does not determine the merits of the case. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596]; *Cohen, supra,* 40 Cal.3d at p. 286.) Participants in this appeal have requested judicial notice of several evidentiary items that were not produced in the trial court.[18] This fact highlights the preliminary nature of this case. By acquiescing in the plaintiff Unions' approach to the case, rather than pursuing its statutory remedy under the CPRA, the Daily News has agreed to the delay that is occasioned in a regular civil action for an injunction. Other pleadings

---

[18] Because the information was not made available to the trial court, we deny the request for judicial notice of information copied from various Internet Web sites, filed by the California Newspaper Publishers Association and other media amici curiae.

are pending in this matter, it is apparent that more evidence is available on the issues of a reasonable expectation of privacy; whether the information sought is already publicly available; and the public purpose to be served by disclosure of individually identified salary information. Both sides will have an opportunity to present additional evidence that may cause the court to modify its preliminary injunction.

Based on all of these factors and in light of the limited evidence before the trial court, we cannot conclude that the trial court erred by maintaining the status quo and withholding the employee names prior to completion of this action.[19]

*Disclosure of Peace Officer Personnel Records*

The Unions argue that Penal Code sections 832.7 and 832.8 prohibit disclosure of individually identified earnings of peace officers.

Section 6254, subdivision (k) exempts from disclosure: "Records the disclosure of which is exempted or prohibited pursuant to federal or state law . . . ." This exemption includes Penal Code section 832.7. (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1422–1423 [44 Cal.Rptr.2d 532].) In *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1438–1440 [38 Cal.Rptr.2d 632], the court reviewed a newspaper's CPRA request for personnel records pertaining to an investigation of a police officer. The court found that the CPRA incorporated the confidentiality provisions of Penal Code section 832.7. (*City of Richmond, supra,* at p. 1440.)

Penal Code section 832.7, subdivision (a) provides in relevant part: "(a) Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."[20]

---

[19] We are not convinced that the purported fact that other cities may have released employee names means that the employees of defendant cities have no expectation of privacy. We do not have access to the policies of those cities, the union agreements or other understandings that support the conclusion that these employees have no privacy interest. For that reason, we deny the appellants' request for judicial notice of the two superior court opinions from other counties. We also deny the respondents' request to strike portions of the briefs referencing these cases as unnecessary. We have not considered the superior court decisions.

[20] Penal Code section 832.8 defines "personnel records" as follows: "As used in Section 832.7, 'personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and employment history, home

The Daily News argues that because name and compensation are not expressly listed as components of a peace officer's personnel file in Penal Code sections 832.7 and 832.8, they are not intended to be included, citing *New York Times Co. v. Superior Court* (1997) 52 Cal.App.4th 97, 103–104 [60 Cal.Rptr.2d 410].) In *New York Times,* a sheriff refused to disclose of the names of deputies involved in a shooting, arguing that the information had been placed in personnel files and was protected by Penal Code section 832.7. The court determined: "A public servant may not avoid such scrutiny by placing into a personnel file what would otherwise be unrestricted information." (*New York Times, supra,* at pp. 100, 103.) The *New York Times* case involved only release of the names of officers (who are required to wear name badges) who were involved in a public shooting. It does not shed any light on individually identified salary records that are normally kept in confidential personnel files.

The cited Penal Code sections are a codification of "the privileges and procedures surrounding what had come to be known as 'Pitchess motions' [*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*)]." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 51 [19 Cal.Rptr.2d 73, 850 P.2d 621].) However, the statutes have been applied in many other contexts, including preventing disclosure of an officer's attendance sheets. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1121, fn. 5 [75 Cal.Rptr.2d 27] [in employment discrimination action, attendance sheets are confidential peace officer personnel records that cannot be disclosed without a court order]; see also *City of Fresno v. Superior Court* (1988) 205 Cal.App.3d 1459 [253 Cal.Rptr. 296].)

In a personal injury action against a police officer, the court in *Hackett v. Superior Court* (1993) 13 Cal.App.4th 96, 100–101 [16 Cal.Rptr.2d 405] recognized that Penal Code sections 832.7 and 832.8 were a reaction to *Pitchess,* but found that "the legislative intent is clear—to include within the conditional privilege all information in a peace officer's personnel file, including home addresses and similar data, without regard to whether the information could also be obtained from the officer or elsewhere."

As explained in *Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419 [98 Cal.Rptr.2d 144]: "The term 'confidential' in Penal Code section 832.7 has independent significance and 'imposes confidentiality upon peace officer

addresses, or similar information. [¶] (b) Medical history. [¶] (c) Election of employee benefits. [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

personnel records and records of investigations of citizens' complaints, with strict procedures for appropriate disclosure in civil and criminal cases . . . .' [Citation.] . . . [¶] Given the status of confidentiality conferred by the Legislature on police personnel records, the officer's right to be notified that his or her records are sought (Evid. Code § 1043, subd. (a)), and his or her right to seek a protective order from 'unnecessary annoyance, embarrassment or oppression' (Evid. Code, § 1045, subd. (d)), courts have concluded that an officer has a *limited* or *conditional* 'privilege' in such records. [Citations.]" (*Id.* at p. 426.)

A recent case expressly determined that a peace officer's payroll records are included within subdivision (f) of Penal Code section 832.8. In *City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883 [3 Cal.Rptr.3d 915] (*City of Los Angeles*), the court, although requiring disclosure between husband and wife in a dissolution action, held generally that "[t]he legitimate expectation of privacy recognized and protected by statute includes peace officers' payroll records." (*City of Los Angeles, supra,* at p. 885.)

The court acknowledged that the term "payroll records" did not appear in the statute, but reasoned that: "Even though the pay scale of public employees is generally a matter of public record, it is quite a different thing to know with precision another person's salary, selection of benefits, and potential retirement income. Few records are deemed more personal. Of all records kept by employers, it is the disclosure of payroll records that would constitute one of the greatest 'unwarranted invasions of personal privacy.' " (*City of Los Angeles, supra,* 111 Cal.App.4th at pp. 891–892.)

We agree with the reasoning in *City of Los Angeles* regarding the privacy right involving police personnel records containing earnings information, and determine that compliance with the provisions of Penal Code section 832.7 is required in this case prior to disclosure, including notice to the officers and a hearing under sections 1043 and 1046 of the Evidence Code. Because that procedure has not been followed, the peace officer records in this case are not subject to disclosure at this time.

## CONCLUSION

Resolution of these equally valid, competing interests is not an easy task. The trial court did not abuse its discretion and carefully tailored its preliminary injunction to prevent premature disclosure of the employee names based on the showing at this stage of the proceedings. If the names are disclosed and that action is later determined to be error, the employees have no remedy. Because of the unusual (and unchallenged) posture of this case as an ordinary

action for injunctive relief, the balance for purposes of a preliminary injunction must remain on the side of nondisclosure until the evidence on the merits has been fully presented and weighed by the trial court.

The order granting the preliminary injunction is affirmed.

Stein, J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 22, 2004.