Filed 3/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN COLLONDREZ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF RIO VISTA,<br><br>    Defendant and Appellant. | A159246<br><br>(Solano County<br>Super. Ct. No. FCS052922) |
| JOHN COLLONDREZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF RIO VISTA,<br><br>    Defendant and Respondent. | A159369 |

Former City of Rio Vista Police Officer John Collondrez (Collondrez) sued the City of Rio Vista (City) and Police Chief Dan Dailey (Chief Dailey) over the City's disclosure of information from Collondrez's personnel file in response to requests under the California Public Records Act (CPRA, Gov. Code, § 6250 et seq.). The City moved to strike the complaint under California's anti-SLAPP statute, Code of Civil Procedure section 425.16.

The trial court found the complaint arose from protected speech in connection with a public issue and that Collondrez had shown a probability of prevailing on his causes of action for breach of contract (count one) and

1

invasion of privacy (count two), but not on the remaining counts for interference with prospective economic advantage (count three) and intentional infliction of emotional distress (count four). It therefore denied the motion to strike as to counts one and two and granted it as to counts three and four. Both parties appealed.

We agree with the court that the complaint arises from speech protected by the anti-SLAPP statute, but conclude it erred in finding Collondrez established a likelihood of prevailing on counts one and two. We therefore affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Disciplinary Action against Collondrez

On August 17, 2017, then-Police Officer John Collondrez was dispatched to respond to a hit and run accident. According to an internal affairs investigation, Collondrez falsified his report of the incident and his investigation, arrested a suspect without a warrant or probable cause, used excessive force in effecting the arrest, applied a carotid control hold on the suspect, and failed to request medical assistance for the suspect or inform the jail that he had applied a carotid control hold.

In October 2017 Chief Dailey issued a Notice of Intended Disciplinary Action (NOID) based on the internal affairs investigation. The NOID informed Collondrez that Chief Dailey intended to terminate his employment with the Rio Vista Police Department for violating City personnel rules and regulations concerning malfeasance, misconduct, dishonesty, and the making of false statements or reports. Collondrez was notified of his right to respond to the proposed action.

Collondrez invoked that right, and in November 2017 City Manager Robert Hickey presided over a hearing pursuant to *Skelly v. State Personnel*

2

*Bd.* (1975) 15 Cal.3d 194 (*Skelly*). After reviewing the investigation report, the NOID, Collondrez's written response to the NOID, and his attorney's oral presentation, Hickey affirmed Chief Dailey's findings and recommendations, sustained the proposed disciplinary action, and informed Chief Dailey that he "may proceed with" the termination of Collondrez's employment with the Department. Collondrez promptly appealed and the matter was set for administrative arbitration pursuant to Government Code sections 3304 and 3304.5 and City personnel rules.

The parties selected a neutral arbitrator and set a hearing for late August 2018, but then entered into settlement discussions. In September 2018 they agreed to a settlement whereby the City agreed to pay Collondrez $35,000 and Collondrez agreed to resign (effective December 2017), release the City from any claims arising prior to the settlement, and not seek future employment with the City.

Section 2.3 of the settlement agreement provides that the "City will maintain all disciplinary notices and reports relating to [Collondrez] in [Collondrez's] personnel file. Such records will only be released only as required by law or upon legal process issued by a court of competent jurisdiction. Upon receiving a request to unseal and release [Collondrez's] disciplinary records, City will notify [Collondrez] of such request in writing in order to provide [Collondrez] with an opportunity to object to the release of the sealed records."

II.    **The City's Disclosure of Information from Collondrez's Personnel File**

Effective January 1, 2019, Penal Code section 832.7[1] was amended to require the disclosure of police officer personnel records pertaining to, among

---

[1]   Unless otherwise noted, further statutory citations are to the Penal Code.

3

other things, sustained findings of dishonesty or making false reports. Pursuant to subdivision (b)(1)(C) of section 832.7, "the following peace officer or custodial officer personnel records . . . shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act . . . . ¶ Any record relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence."

Beginning in January 2019 the City received a number of media requests under the CPRA for records related to Collondrez's disciplinary action. The City produced the responsive records from Collondrez's personnel file and gave Collondrez prior notice of some, but not all, of the disclosures. Various media outlets subsequently reported on the August 2017 incident, the misconduct allegations, and the internal affairs investigation. One article reported Collondrez's current employer, Uber, was concerned about the August 2017 incident and would " 'take appropriate action' " after reviewing the matter. In February 2019 Uber fired Collondrez, citing to the media reports about the August 2017 incident.

Collondrez sued the City and Chief Dailey[2] for breach of contract, invasion of privacy, interference with prospective economic advantage, and intentional infliction of emotional distress. The City demurred and filed a

---

[2]  Unless the distinction between the two defendants is material, we hereafter refer to the defendants jointly as "the City."

4

simultaneous anti-SLAPP motion to strike all four causes of action. In both, the City asserted the complaint failed as a matter of law because, among other reasons, it was required to disclose Collondrez's records under Penal Code section 832.7 and the CPRA.

The trial court denied the anti-SLAPP motion and overruled the demurrer as to the breach of contract and invasion of privacy counts; it granted the motion and found the demurrer moot as to interference with prospective economic advantage and intentional infliction of emotional distress. Specifically, the court found the entire complaint arose from acts in furtherance of the right of free speech in connection with an issue of public concern, and therefore concerned protected activity under the anti-SLAPP statute. It found Collondrez made a prima facie showing that he would likely prevail on his first two causes of action because the City's disclosures did not fall within the new statutory exception to the confidentiality generally afforded to police personnel records. However, the court found Collondrez failed to make a prima facie showing that he was likely to prevail on his two other claims. Finally, the court found the City had not shown its actions were protected by any applicable privilege or immunity.

Both parties timely appealed.

## DISCUSSION

### I. The Anti-SLAPP Statute

Code of Civil Procedure section 425.16 (hereinafter section 425.16) provides for the early dismissal of certain unmeritorious claims brought to thwart constitutionally protected speech or petitioning activity. (See *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 102, disapproved on another point in *Baral v. Schnitt* (2016) 15 Cal.5th 376, 392-395.) It provides: "(b)(1) A cause of action against a person arising from any act of

that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." [¶] . . . [¶] (e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16.) "The only way a defendant can make a sufficient threshold showing is to demonstrate that the conduct by which the plaintiff claims to have been injured falls within one of those four categories." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1130.)

We consider an anti-SLAPP motion in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in

6

connection with a public issue,' as defined in the statute.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  An anti-SLAPP motion does not survive this second prong " 'if the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff.  [Citation.]' " (*Fleishman v. Superior Court* (2002) 102 Cal.App.4th 350, 356.)

We review the trial court's ruling on an anti-SLAPP motion de novo. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

## II.    Protected Activity

Collondrez argues his complaint is not subject to the anti-SLAPP statute because it does not arise from protected activity.  This is so, he maintains, because its gravamen is not the release of his information but rather the City's failure to give him pre-release notice of the CPRA requests as required by the settlement agreement.  "Had the City complied with the Agreement and afforded Collondrez advance notice—for the express purpose of allowing Collondrez to object to an unlawful disclosure of his confidential information—no harm would have occurred and Collondrez would not have been forced to file the Complaint to remedy the damages caused."  This argument is unpersuasive.

" ' "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.". . .' " (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478.)  "We are mindful that the

7

lines drawn in these cases are fine ones. However, we are reminded by our Supreme Court . . . that the 'focus' of the statute 'is not the form of plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability.' " (Id. at p. 1483.)

" 'To determine whether a cause of action arises from protected activity, we disregard its label and instead examine its gravamen "by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' " [citation], i.e., " '*the acts on which liability is based*,' " not the damage flowing from that conduct.' [Citations.] ¶ . . . [T]he focus is on determining what ' "the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." ' [Citation.] 'If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.' " (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92-93.)

Applying these principles, we conclude Collondrez's complaint arises from protected speech as each cause of action is fundamentally premised on the City's release of his personnel information to media outlets. That Collondrez alleges the City also violated his contractual pre-disclosure notice right does not change the fact that the harmful act at the heart of the complaint, the act that allegedly cost him his job at Uber and resulted in other economic and emotional harm, is the publication of his personnel information. Whether or not the City breached the contractual notice provision, that disclosure is at the core of his action. " '[W]here a cause of action alleges both protected and unprotected activity, the cause of action

8

will be subject to section 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672.)

Collondrez's conclusory assertion that prior notice would have allowed him to successfully oppose the media requests underscores that the actual harm alleged in the complaint resulted from the disclosure itself. Conversely, there would be no basis for any of Collondrez's claims had the City *not* provided the information to the press. In short, in no way can the City's decision to release Collondrez's personnel information and the harm it allegedly caused plausibly be characterized as "only incidental and collateral to" its alleged failure to notify him of the disclosures in advance. "[A] plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a 'garden variety breach of contract [or] fraud claim' when in fact the liability claim is based on protected speech or conduct." (*Martinez v. Metabolife Internat., Inc* (2003) 113 Cal.App.4th 181, 187.)

Alternatively, Collondrez contends the disclosures were not protected activity under the anti-SLAPP statute because they were not made "before . . . [an] official proceeding" (§ 425.16, subd. (e)(1)) or "in connection with an issue under consideration or review by . . . [an] official proceeding." (§ 425.16, subd. (e)(2).) Even if that were so, a question we do not decide here, it does not help him. The disclosures were made to journalists pursuant to CPRA requests, were published in news media, and concerned police misconduct— undoubtedly an issue of public interest. They therefore fall within section 425.16, subdivisions (e)(3)(statements "made in a . . . public forum in connection with an issue of public interest) and (e)(4)(catch-all category for "any other conduct" in furtherance of free speech rights "in connection with a

9

public issue or an issue of public interest.") "Reporting the news [qualifies] as an exercise of free speech. [Citation.] Reporting the news requires the assistance of newsgathering and other related conduct and activity, which are acts undertaken in furtherance of the news media's right to free speech. Such conduct is therefore protected conduct under the anti-SLAPP statute." (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 101; *Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1086 [state agency's release of investigation results to media protected by section 425.16, subd. (e)(3)]; see also Cal. Const. Art. I, § 3(b)(7) [compliance with CPRA ensures public access to writings of public officials and agencies].)

Collondrez further argues the anti-SLAPP statute is inapplicable because the City has a mandatory, nondiscretionary duty to respond to CPRA requests and therefore "as a matter of law cannot be 'chilled' from complying with such requests in the future." Again, we disagree. By its terms, the CPRA requires responding agencies to make determinations as to whether the requested records are subject to or exempt from disclosure (Gov. Code §§ 6253, subd. (c), § 6255, subd. (a))[3] and whether the public interest served by nondisclosure outweighs that served by disclosing the records. (§ 6255, subd. (a)[4]; *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 818.) We see no

---

[3] "Each agency, upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefor." (Gov. Code, § 6253, subd. (c).)
[4] "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest of the record." (Gov. Code, § 6255, subd. (a).)

basis for Collondrez's assumption that the making of such determinations is immune from the chilling effect of potential litigation.

Nor are we persuaded by his reliance on cases holding the exercise of free speech rights was not implicated by a police officer's execution of an arrest warrant (*Anderson v. Geist* (2015) 236 Cal.App.4th 79, 87 (*Anderson*)) or a pension board's imposition of an increased contribution amount as compelled by a vote of its members. (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 353-354.) Those acts were "mandated by law, without more." (*Id.* at p. 354; *Anderson, supra*, 236 Cal.App.4th at p. 292 ["exercise of a warrant is . . . the performance of a mandatory duty, at the direction of the court"].) The same cannot be said here.

In sum, the trial court correctly found the complaint arose from protected speech.

### III.    Likelihood of Prevailing

We turn to the second step of the anti-SLAPP analysis: whether Collondrez established a likelihood of prevailing on any of his causes of action. As noted, the trial court found he made a prima facie showing that he would likely prevail on his breach of contract and invasion of privacy claims because the City's release of information from his personnel file was not compelled by operation of section 832.7, subdivision (b)(1)(c). We disagree with the court's interpretation of that provision, and therefore reach the contrary conclusion.

In *Becerra v. Superior Court* (2020) 44 Cal.App.5th 897 (*Becerra*) we addressed the recent change in law effected by the enactment of section 832.7: "In 2018, the Governor signed Senate Bill No. 1421 (2017-2018 Reg. Sess.) (hereafter SB 1421), which amended section 832.7. [Citation.] Under

11

SB 1421, section 832.7 retains the provision that 'personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed' in any criminal or civil proceeding except pursuant to discovery under certain portions of the Evidence Code. [Citations.]  As amended, however, section 832.7(a) now provides that the confidentiality of officer personnel records is subject to a newly added subdivision (b) . . . ."  (Id. at p. 915.)

Section 832.7, subdivision (b)(1)(C) is the relevant provision here.  It requires public disclosure of records "relating to an incident in which a *sustained finding* was made by any law enforcement agency or oversight agency of dishonestly by a peace office or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence."  (§ 832.7, subd. (b)(1)(C), italics added.)

Whether the City was obligated to disclose Collondrez's personnel information turns on whether there was a "sustained finding" within the meaning of subdivision (b)(1)(C).  "Sustained finding" is defined in section 832.8, subdivision (b) as "a *final determination* by an investigating agency, commission, board, hearing officer, or arbitrator, as applicable, following an investigation and opportunity for an administrative appeal pursuant to Sections 3304 and 3304.5 of the Government Code, that the actions of the

12

peace officer . . . were found to violate law or department policy."[5] (Italics added.) The specific question posed here is whether there was such a "final determination."

The trial court concluded there was not. It reasoned that, although Collondrez "did request a *Skelly* hearing with respect to the City Manager's decision[,] . . . no 'sustained finding' followed this 'opportunity for an administrative appeal['] because [Collondrez] and the City settled the dispute before any final determination was made." Collondrez agrees, and maintains City Manager Hickey's decision after the *Skelly* hearing was not a "final determination" because "a *Skelly* decision necessarily comes before—not 'following'—an 'opportunity for administrative appeal.' " The City, in contrast, asserts the City Manager's decision constitutes a "sustained finding" because it was made after an investigation and Collondrez was afforded (but ultimately forwent) the opportunity for an administrative appeal before a neutral arbitrator.

The resolution turns on the interpretation of section 832.8, subdivision (b). " ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and

_____

[5] Under Government Code section 3304, "No punitive action . . . shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal." (Gov.Code, § 3304, subd. (b).) Government Code section 3304.5 specifies that a public safety officer's administrative appeal "shall be conducted in conformance with rules and procedures adopted by the local public agency."

13

purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*Becerra, supra,* 44 Cal.App.4th at p. 917; *Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 618.)

Applying these principles, we cannot agree with the court's interpretation. The statutory language is not definitive and Collondrez's construction raises problematic issues. The Legislature specified there must be *an opportunity* for an administrative appeal before records are subject to release under section 837.2, not a completed administrative appeal. Under Collondrez's view that a "final determination" is necessarily a decision *issued* after there has been an opportunity for an administrative appeal, however, the only "determination" that could seemingly qualify would be a decision rendered upon a completed appeal. But if the Legislature intended to so limit the new disclosure requirements to disciplinary cases that have been pursued through a full administrative appeal, it could easily have said so. Moreover, construing section 838.2 to require a *completed* administrative appeal would render superfluous the Legislature's explicit requirement that the officer was provided an *opportunity* to appeal. "[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and

14

the court should avoid a construction that makes some words surplusage." (*Agnew v. State Bd. Of Equalization* (1999) 21 Cal.4th 310, 330.)

We also find Collondrez's construction hard to square with the legislative intent underlying SB 1421. In *Becerra,* addressing the strong public interest in making serious officer misconduct records accessible, we observed that "the legislative intent behind Senate Bill 1421 was to provide transparency regarding instances of an officer's use of significant force and sustained findings of officer misconduct by allowing public access to officer-related records maintained either by law enforcement employers or by any state or local agency with independent law enforcement oversight authority. Moreover, in amending section 832.7, the Legislature sought to afford the public 'the right to know all about serious police misconduct,' to stop concealing incidents where an officer violated civilian rights, and to 'address and prevent abuses and weed out the bad actors.' " (*Becerra, supra,* 44 Cal.App.4th at p. 921.) Collondrez's interpretation of section 838.2 would enable officers found to have committed serious misconduct to thwart that "right to know" by declining to pursue an administrative appeal of a disciplinary finding or, as here, by settling or abandoning such an appeal at any point before its conclusion. We decline to adopt that interpretation without a clear indication the Legislature intended to so broadly curtail the reach of the new law.

Conflating aspects of the NOID proceedings and the *Skelly* hearing, Collondrez next makes a scattershot argument that there was no valid "final determination" because the City failed to comply with the City Personnel Rule XV's notice requirement for disciplinary actions. Not so. Rule XV provides: "Whenever it is the intention of the Department Head to take a disciplinary action against a regular employee, the employee shall be

15

provided a written statement of reasons for the discipline and provided with a copy of any documents or information upon which the decision was made. The employee and a representative of his/her choosing will be provided an opportunity to respond to the charges made. A written request must be submitted to the Department Head within five (5) working days of being served with the notice of intended action. Following consideration of the employee response to the charges the Department Head will notice the employee that the disciplinary action is withdrawn, modified or enacted by a Notice of Discipline." Collondrez has not shown the disciplinary proceedings before Chief Dailey failed to satisfy those requirements.

Finally, Collondrez contends that, even if there were a "sustained finding" of dishonesty, the City unlawfully failed to redact information in his personnel file that related to the August 2017 incident but did not directly pertain to the dishonesty finding. Specifically, he asserts the City should have withheld from disclosure summaries of his statements to investigators and information related to his warrantless entry and arrest, inappropriate use of force, and failure to secure medical care for the suspect. He is mistaken.

Section 832.7, subdivision (b)(1)(C) broadly requires the disclosure of any qualifying record "*relating to an incident* in which a sustained finding" of officer dishonesty was made. (Italics added.) All of the disclosed records "relat[ed] to" the August 2017 incident. Moreover, Section 832.7, subdivision (b)(5) permits a responding agency to redact qualifying records *only* for specified purposes: to remove personal data or information outside the name and work-related information of the officers, preserve the anonymity of complainants and witnesses, protect confidential medical, financial, or other information whose disclosure is specifically prohibited by federal law or

16

would cause an unwarranted invasion of personal privacy, or where there is reason to believe that disclosure of the record would pose a significant danger to the physical safety of the officer or another person. None of those circumstances are present here.

In sum, Collondrez challenged the NOID through a *Skelly* hearing and was then provided and availed himself of an opportunity to administratively appeal the decision rendered after that hearing. He withdrew his appeal, so the decision stands and became a "final determination" within the meaning of section 832.8. Accordingly, the trial court erred in finding Collondrez's records were wrongfully disclosed. Because the entire complaint was premised on his claim of wrongful disclosure, the anti-SLAPP motion should have been granted as to all causes of action.[6]

## DISPOSITION

The order is reversed as to the first and second causes of action and affirmed as to the third and fourth causes of action. Upon remand the City is entitled to an award of attorneys' fees under Code of Civil Procedure section 425.16, subdivision (c).

---

[6] We therefore do not reach Collondrez's challenge to the court's finding that he failed to provide evidence supporting his third and fourth causes of action or the City's remaining challenges to the trial court's ruling on the second anti-SLAPP prong. Nor, given our conclusion that the City Manager's decision was a "sustained finding" under section 832.7, need we decide the merits of the City's claim that the NOID also suffices for that purpose.

17

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Wiseman, J.*


A159246/A159369/*Collondrez v. City of Rio Vista*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

Trial Court:      Solano County Superior Court

Trial Judge:      Hon. Michael Mattice

Counsel:      Rains Lucia Stern St. Phalle & Silver, Harry S. Stern and Zachary A. Lopes for Plaintiff and Appellant and for Plaintiff and Respondent.

Kronick, Moskovitz, Tiedemann & Girard, Mona G. Ebrahimi, Kevin A. Flautt and Olivia R. Clark for Defendant and Respondent and for Defendant and Appellant.