[No. D044899. Fourth Dist., Div. One. Mar. 21, 2005.]

ROCCO VERSACI, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PALOMAR COMMUNITY COLLEGE DISTRICT, Real Party in Interest.

## COUNSEL

Charles Wolfinger for Petitioner.

No appearance for Respondent.

Currier & Hudson, C. Anne Hudson, Andrea Naested and Ian Garriques for Real Party in Interest.

## OPINION

**McCONNELL, P. J.**—Rocco Versaci petitions this court for a writ of mandate to compel the San Diego County Superior Court to grant his request for an order requiring the Palomar Community College District (the District) to disclose under the California Public Records Act (the Act) (Gov. Code, § 6250 et seq.)[1] the personal performance goals of its former superintendent, Sherrill Amador, Ed.D., for the 2002–2003 academic year. Versaci contends the trial court erred by finding the goals are not incorporated into the employment contract, which would mandate their disclosure as a matter of

---

[1] Statutory references are to the Government Code unless otherwise specified.

law under section 6254.8, and by finding the goals are exempt from disclosure under section 6254, subdivision (c), which applies to personnel files. We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2001 the District hired Dr. Amador as its superintendent and president, under a four-year contract beginning the following July, at a starting salary of $162,000. Paragraph No. 4 of the contract provided: "[Dr. Amador] will receive an annual written evaluation by the Governing Board [the Board] no later than May 1 of each year. This evaluation will be based on overall performance and mutually agreed upon goals and objectives established each year prior to July 1 and will also include a mid-term progress meeting. All evaluations will be held in a closed session." The contract also entitled Dr. Amador to a 5 percent raise and a one-year contract extension annually subject to a positive evaluation by the Board.

In a June 2002 closed session Dr. Amador and the Board mutually established her personal performance goals for the 2002–2003 academic year. The District included the goals in her personnel file and maintained their confidentiality. Between January and May 2003 the Board held closed sessions to evaluate Dr. Amador's performance. At a May 13 open session the Board reported that Dr. Amador's overall evaluation was satisfactory, and in light of budgetary constraints she agreed to forgo one-half of the raise to which she was entitled. The Board's minutes also stated: "The Board cannot ignore the current situation that needs to be addressed by [Dr. Amador], with the support of the . . . Board. [¶] Accordingly, the Board directs [Dr. Amador] to focus on building relationships and improving morale, with progress to be monitored on an ongoing basis."

At a May 27, 2003 open session the Board voted three to two to extend Dr. Amador's contract through June 2007 and to increase her compensation by 2.5 percent. The dissenting trustees unsuccessfully sought to defer the vote pending further evaluation of her performance in closed session.

In June 2003 Versaci asked the District, under the Act, for "a copy of the eleven annual job goals" of Dr. Amador for the 2002–2003 academic year.[2] The District denied the request based on provisions of the Act and

---

[2] Versaci is the president of the District's faculty union, and the District "has been involved in ongoing and extensive negotiations" with him "over the District's first collective bargaining agreement with the exclusive representative of its faculty bargaining unit members." According to the District's representative in the negotiations, a "major issue for the faculty has been salary increases in a time when public resources are scarce due to the state budget crisis."

Dr. Amador's right of privacy under article I, section 1 of the California Constitution. It also denied Versaci's subsequent request.

In November 2003 Versaci petitioned the superior court for a writ of mandate to compel disclosure of the information under the Act. Versaci argued section 6254.8 mandates disclosure of Dr. Amador's performance goals because they were terms of her employment contract, and alternatively, there is no exemption under the Act allowing the District to withhold the information. Versaci asked the court to conduct an in camera review of the "records of the eleven annual job goals."

In a tentative ruling, the court denied the petition on the grounds the information was not part of the employment contract, and it is exempt from disclosure as a personnel record under section 6254, subdivision (c), and disclosure would invade Dr. Amador's constitutional right of privacy. After oral argument, the court confirmed its tentative ruling and entered a final order denying the petition. The court did not address Versaci's request for an in camera review.

On November 13, 2003, Dr. Amador announced her retirement from the District, effective July 1, 2004.

## DISCUSSION

### I

### *Standard of Review*

■ " 'Pursuant to section 6259, subdivision (c), an order of the trial court under the [Act], which either directs disclosure of records by a public official or supports the official's refusal to disclose records, is immediately reviewable by petition to the appellate court for issuance of an extraordinary writ. . . . The standard for review of the order is "an independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence." ' [Citation.] In contrast, the interpretation of the [Act] and its application to undisputed facts present questions of law subject to de novo appellate review." (*CBS Broadcasting, Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 905–906 [110 Cal.Rptr.2d 889].)

### II

### *The Governing Statute*

■ California's Constitution contains an explicit right of privacy that operates against private and governmental entities. (Cal. Const., art. I, § 1;

*Gilbert v. City of San Jose* (2003) 114 Cal.App.4th 606, 613 [7 Cal.Rptr.3d 692].) "Constitutional privacy interests are not absolute, however. They must be balanced against other important interests." (*Gilbert v. City of San Jose,* at p. 613.)

■ The Act provides for the inspection of public records maintained by state and local agencies. (§ 6253, subd. (a).) "The Legislature enacted the [Act] in 1968 to give the public access to information in possession of public agencies in furtherance of the notion that government should be accountable for its actions and, . . . to verify accountability, individuals must have access to government files. [Citation.] But 'Recognition of the importance of preserving individual privacy is also evident in [the Act]. The [Act] begins with the phrase: "In enacting this chapter, the Legislature [is] mindful of the right of individuals to privacy . . . ." [Citation.]' [Citation.] 'Disclosure of public records thus involves two fundamental yet competing interests: (1) prevention of secrecy in government; and (2) protection of individual privacy.' " (*Gilbert v. City of San Jose, supra,* 114 Cal.App.4th at p. 610.)

■ The Act defines "public record" as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency." (§ 6252, subd. (e).) "The definition is broad and ' " 'intended to cover every conceivable kind of record that is involved in the governmental process[.]' " ' " (*Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001, 1006 [131 Cal.Rptr.2d 553].)

"[A]ll public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 [19 Cal.Rptr.2d 882, 852 P.2d 377].) Under section 6254 an agency may invoke an exemption for several types of public records from disclosure, including "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." (§ 6254, subd. (c).) Under section 6255, the "catchall exception" (*Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045 [13 Cal.Rptr.3d 517]), an agency may withhold public records even if no express exemption is applicable, if it can demonstrate "that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).)

■ Sections 6254, subdivision (c) and 6255, however, are inapplicable in the context of a public employment contract. Section 6254.8 provides: "Every employment contract between a state or local agency and any public official or public employee is a public record which is not subject to the provisions of Sections 6254 and 6255."

III

*The Court Correctly Found Dr. Amador's Personal
Performance Goals Are Not Part of the Employment
Contract Within the Meaning of Section 6254.8*

Versaci contends the court erred by finding Dr. Amador's performance goals are not part of the employment contract subject to disclosure as a matter of law under section 6254.8. His theory is that because paragraph No. 4 of the employment contract refers to goal setting in conjunction with Dr. Amador's yearly performance evaluations, the written goals are "key terms" of the contract that must be disclosed.

The Act does not define "employment contract," and it appears there are only two published opinions discussing Government Code section 6254.8, neither of which concerns the issue here. (See *Braun v. City of Taft* (1984) 154 Cal.App.3d 332 [201 Cal.Rptr. 654]; *Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500 [5 Cal.Rptr.3d 847].) Versaci relies on Civil Code section 1642, which applies to contracts generally, and provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

■ "It is a familiar rule . . . that where several papers covering the same subject matter are executed by . . . the same parties . . . , all are to be considered together, and with the same effect as if all had been incorporated in one document." (*McAuliff v. McFadden* (1919) 42 Cal.App. 505, 511 [183 P. 870], citing Civ. Code, § 1642.) Civil Code section 1642 "is most frequently applied to writings executed contemporaneously, but it is likewise applicable to agreements executed by the parties at different times if the later document is in fact a part of the same transaction." (*Body-Steffner Co. v. Flotill Products* (1944) 63 Cal.App.2d 555, 560 [147 P.2d 84].) "The contract need not recite that it 'incorporates' another document," but " ' "[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal . . . ." ' " (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54 [67 Cal.Rptr.2d 850].)

■ Whether a document is incorporated into the contract depends on the parties' intent as it existed at the time of contracting. The parties' intent must, in the first instance, be ascertained objectively from the contract language. (*Shaw v. Regents of University of California, supra*, 58 Cal.App.4th at p. 54.) However, "[t]he use of extrinsic evidence to show [whether] several written instruments were intended to constitute a single contract does not involve a

violation of the parol evidence rule." (*Meier v. Paul X. Smith Corp.* (1962) 205 Cal.App.2d 207, 219 [22 Cal.Rptr. 758].) ▉ The applicability of Civil Code section 1642 is a question of fact for the trial court, and the appellate court will affirm the court's resolution if it is supported by substantial evidence. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1675 [53 Cal.Rptr.2d 515]; *Kwikset Locks, Inc. v. Stewart Commissaries* (1964) 225 Cal.App.2d 146, 148–149 [37 Cal.Rptr. 248].)

Versaci contends the "annual goals for 2002–2003 were mutually enforceable terms of [Dr. Amador's] employment contract when she and the Board agreed on them in June 2002," because "[i]f the [Board] found her performance satisfactory but refused to grant her a pay raise and contract extension, she clearly has a breach of contract claim based on [its] promise to pay for her performance of the goals." That analysis is faulty, however, because Dr. Amador's evaluations were based on her "overall performance" in addition to the agreed goals. Performance of the goals, standing alone, did not automatically entitle Dr. Amador to increased contract benefits.

Additionally, Versaci submits section 6254.8 is applicable because Dr. Amador's personal goals constitute compensation terms typically included in an employment contract, and she cannot shield them from public scrutiny by placing them in her personnel file. In support, he cites an Attorney General opinion (68 Ops.Cal.Atty.Gen. 73 (1985)), in which a city manager determined the amounts of executive managers' bonuses based on his private evaluation of their performance. The city divulged the number of executives in the program, the salary range for each executive, the total cost of the awards program and the average percentage amount for all the awards, but it withheld the individual amounts of the bonuses and reasons for awarding them.

The city justified its nondisclosure on grounds the executives who received lesser awards may be embarrassed and disclosure may jeopardize the benefits of candid disclosure in the confidential evaluation process. (68 Ops.Cal.Atty.Gen., *supra,* at p. 73.) The Attorney General, without any analysis of section 6254.8, concluded that "[e]ach bonus constitutes 'wages' and forms part of the employment contract," and "any record specifying the amount of the bonus or the exceptional services for which the bonus is paid manifests provisions of the executive's employment contract within the scope of section 6254.8." (68 Ops.Cal.Atty.Gen., *supra,* at p. 75.)

Here, in contrast, there was no secrecy regarding Dr. Amador's compensation. Rather, the employment contract set forth the amount of her salary and the method for calculating any future salary increases, and the Board announced in open session the result of its evaluations, whether it found her

performance satisfactory or granted a pay raise or contract extension. Versaci does not contend the Act mandates disclosure of the evaluations conducted in closed session.

Versaci's reliance on another Attorney General opinion (63 Ops.Cal:Atty.Gen. 215 (1980)) is likewise misplaced. In that opinion, the issue was whether a provision of the Ralph M. Brown Act (the Brown Act) (Gov. Code, § 54950 et seq.) required a hospital board to report at its next public meeting action taken in executive session to set the compensation of an administrator. The Attorney General answered the question in the negative, but went on to say, "that compensation, as an integral part of the hospital administrator's employment contract, would still be a matter of public record under section 6254.8." (63 Ops.Cal.Atty.Gen., *supra,* at p. 216.) Again, Dr. Amador's yearly compensation was disclosed.

*Braun v. City of Taft, supra,* 154 Cal.App.3d 332, is also unavailing. In *Braun,* a city councilman (Braun) was investigating purported irregularities in the city's appointment of a firefighter (Polston) to transit administrator. After the city manager refused to confirm or deny the appointment, Braun reviewed Polston's personnel file and released to the press copies of two letters concerning the appointment and its rescission and the "face sheet" of Polston's salary card, which was modified by whiting out "transit administrator" and writing "firefighter" over it. (*Id.* at p. 339.) The face sheet also revealed information not germane to Braun's investigation, such as Polston's telephone number, address, Social Security and credit union numbers and birth date.

Polston filed a grievance against Braun for invasion of privacy, which the city council refused to consider in a hearing. The council, however, enacted a resolution censuring Braun for disclosing the letters and salary card. Braun then petitioned the superior court for a writ of mandate commanding the city to set aside its censure. The court ruled the records were not within the personnel file exemption and were subject to disclosure under the Act. (*Braun v. City of Taft, supra,* 154 Cal.App.3d at p. 340.)

The appellate court upheld the ruling. It held the letters were subject to disclosure under section 6254.8 as they "manifested [Polston's] employment contract." (*Braun v. City of Taft, supra,* 154 Cal.App.3d at p. 344.) The court concluded that "[b]ecause the letters regarded business transactions and contained no personal information, the [lower] court properly ordered disclosure of the letters." (*Ibid.*) The court rejected the city's argument the personnel exemption applied because the letters were part of the personnel file and their disclosure would embarrass him. (*Id.* at pp. 338–339, 341–342, 344.)

The court expressed concern about personal information on the face sheet of Polston's salary card, but stated it was "reluctant to reverse on [that] limited ground." (*Braun v. City of Taft, supra,* 154 Cal.App.3d at p. 345.) In concluding disclosure did not violate the Act's personnel records exception (§ 6254, subd. (c)), the court explained: "The data listed on the card was not in any way embarrassing. One's telephone number and address, although personal, are seldom secret. There is nothing in the record to show that such information was not available through a city directory or telephone book." (*Braun v. City of Taft, supra,* 154 Cal.App.3d at p. 345.) The court added that "[f]ew persons would find interest in [the employee's] [S]ocial [S]ecurity and credit union numbers, or birth date." (*Ibid.*)

*Braun* does not concern the issue here, whether the employment contract's reference to Dr. Amador's goals constituted an incorporation by reference. Versaci has submitted no authority for the proposition an employee's personal performance goals are ordinarily included in a public employment contract. Further, as noted in *Teamsters Local 856 v. Priceless, LLC, supra,* 112 Cal.App.4th 1500, 1512 [5 Cal.Rptr.3d 847], "*Braun* was decided before the spread of identify theft, and the current widespread and serious concern for the privacy of an individual's financial data. Identity thieves today would have a great deal of interest in an individual's Social Security number and other identifying financial data."

We conclude Dr. Amador's personal performance goals are not part of the contract, and thus section 6254.8 is inapplicable. The mere reference in paragraph No. 4 of the employment contract to future goal setting in conjunction with Dr. Amador's evaluation process does not clearly and unequivocally evidence the parties' intent to incorporate the yet to be determined goals into the contract. Versaci's position that essentially any topic a contract mentions is incorporated therein is unsupported by any authority and would lead to absurd results. Indeed, paragraph No. 4 discusses goals *and* evaluations, the latter of which Versaci concedes are exempt from disclosure under the Act. He presents no persuasive theory for treating goals and evaluations differently insofar as the incorporation question is concerned.

Moreover, the parties' intent is shown by paragraph No. 14 of the contract, which states it "may be amended by mutual agreement of the parties, memorialized in writing, and executed by Dr. Amador and the . . . Board." The District produced evidence the parties never amended the contract to include Dr. Amador's personal performance goals. Further, Dr. Amador submitted a declaration that stated she specifically did *not* intend to expose her personal performance goals to public scrutiny, and thus we may infer she did not intend that they be incorporated into the contract and subject to disclosure as a matter of law. Versaci produced no extrinsic evidence suggesting the parties did intend to include them as contract terms.

IV

*The Court Correctly Found Dr. Amador's Personal
Performance Goals Are Exempt from Disclosure Under
Section 6254, Subdivision (c)*

Versaci also contends the court erred by finding Dr. Amador's performance goals are exempt from disclosure under section 6254, subdivision (c). We are unpersuaded.

■ The Act was modeled after the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.), and thus the "legislative history and judicial construction of the FOIA . . . 'serve to illuminate the interpretation of its California counterpart.' " (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1338 [283 Cal.Rptr. 893, 813 P.2d 240].)

■ "[B]oth the FOIA and the Act expressly recognize that the public's right to disclosure of public records is not absolute." (*City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1017 [88 Cal.Rptr.2d 552].) " '[O]ne does not lose his [or her] right to privacy upon accepting public employment . . . .' " (*New York Times Co. v. Superior Court* (1997) 52 Cal.App.4th 97, 100 [60 Cal.Rptr.2d 410].) Accordingly, subdivision (c) of section 6254 gives a public agency discretion to withhold "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." The FOIA's exemption 6 (Exemption 6) is substantively identical. (5 U.S.C. § 552(b)(6).)

Courts apply a three-step analysis in determining whether Exemption 6 applies. As a threshold matter, the court must determine whether the records sought constitute a personnel file, a medical file or other similar file. If so, the court must determine whether disclosure of the information would "compromise substantial privacy interests; if privacy interests in given information are *de minimis* disclosure would not amount to a 'clearly unwarranted invasion of personal privacy,' . [citation], in light of FOIA's broad policy favoring disclosure." (*Ripskis v. Dept. of Housing and Urban Development* (D.C. Cir. 1984) 746 F.2d 1, 3 [241 U.S. App. D.C. 8] (*Ripskis*).) Lastly, the court must determine whether the potential harm to privacy interests from disclosure outweighs the public interest in disclosure. (*Ibid.*; see also *New York Times Co. v. Superior Court, supra,* 52 Cal.App.4th at p. 104 ["Section 6254, subdivision (c), allows for a weighing of interests by the trial court"].) " 'Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the [FOIA].' [Citations.] The burden is on the agency to persuade the court that the exemption is appropriate." (*Ripskis, supra,* 746 F.2d at p. 3.)

Further, exceptions to the general rule of disclosure are construed narrowly. (*New York Times, supra,* at p. 104.)[3]

 The " 'primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters.' " (*Department of State v. Washington Post Co.* (1982) 456 U.S. 595, 599–600 [72 L.Ed.2d 358, 102 S.Ct. 1957] (*Washington Post*).) To qualify for protection under the exemption, however, the documents sought need not contain "intimate details" or "highly personal" information. Rather, the threshold requirement is minimal and "nonintimate information about a particular individual which happens to be contained in a personnel or medical file can be withheld if its release would constitute a clearly unwarranted invasion of personal privacy." (*Id.* at p. 601.) In *Washington Post,* the court held Congress did not intend "to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information," and rather, the " 'exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.' " (*Id.* at p. 602.)

 It is undisputed that employee performance evaluations fall within the ambit of Exemption 6. (*Ripskis, supra,* 746 F.2d at p. 3; *Celmins v. U.S. Dept. of Treasury Etc.* (D.D.C. 1977) 457 F.Supp. 13, 15.) "In discussing the general attributes of a personnel file, the United States Supreme Court has stated that an individual's personnel file generally contains ' "vast amounts of personal data," ' including '. . . results of examinations [and] evaluations of his [or her] work performance.' The court noted that access to personnel files is 'drastically limited . . . only to supervisory personnel directly involved with the individual . . . .' " (*Teamsters Local 856 v. Priceless, LLC, supra,* 112 Cal.App.4th at p. 1515, citing *Dept. of Air Force v. Rose* (1976) 425 U.S. 352, 369, 377 [8 L.Ed.2d 11, 96 S.Ct. 1592].)

 Versaci concedes Dr. Amador's evaluations are not subject to disclosure, but he asserts her personal performance goals, on which her evaluations were in part based, must be disclosed because the District did not dispute the goals related to her official duties. In *Metropolitan Life Ins. Co. v. Usery* (D.D.C. 1976) 426 F.Supp. 150, 168, however, the court held "personal preferences and goals," as well as evaluations, are "similar" files within the meaning of Exemption 6, even when they do not contain derogatory information, "in that they reflect highly personal details about . . . employees." We agree, and conclude Dr. Amador's personal performance goals constitute a personnel file or other "similar" file within the meaning of section 6254, subdivision (c).

---

[3] At the November 2, 2004 General Election, California voters approved Proposition 59, which amends article I, section 3 of the California Constitution by adding subdivision (b). Subdivision (b)(2) provides in part: "A statute, court rule, ·or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. . . ."

█ Further, we conclude disclosure of Dr. Amador's personal performance goals would "compromise substantial privacy interests." (*Ripskis, supra,* 746 F.2d at p. 3.) In *Metropolitan Life Ins. Co. v. Usery, supra,* 426 F.Supp. at page 168, the court explained that the "disclosure of negative comments or information about an employee on these subjects [including personal preferences and goals] could be quite embarrassing and painful to the employee. While many of the comments and much of the information are favorable or neutral, [Exemption 6] was designed to protect individuals from a wide range of embarrassing disclosures, not just the disclosure of derogatory information. Indeed, the disclosure of favorable information could place the employee in a very embarrassing position with other, possibly jealous, employees."[4] (Fn. omitted.)

█ Turning to the final prong of our analysis, weighing the competing interests, we must determine "the extent to which disclosure of the requested item of information will shed light on the public agency's performance of its duty." (*Teamsters Local 856 v. Priceless, LLC, supra,* 112 Cal.App.4th at p. 1519.) Versaci contends that disclosing Dr. Amador's personal performance goals "allows public review and comment on relevant aspects of [her] performance over the year." As the District points out, however, the public interest in Dr. Amador's performance is moot in light of her retirement effective July 1, 2004.[5]

Versaci also contends disclosure of Dr. Amador's personal performance goals would allow the public to evaluate the trustees' performance in giving her satisfactory evaluations, raises and contract extensions, and her retirement does not render that issue moot. Versaci asks, "How can the public intelligently decide whether to support or oppose the trustees at the next election without knowing what goals they were using?" The public, of course, has a legitimate interest in how the trustees conduct the District's business and manage public revenues. We may consider, however, whether the public interest can be substantially advanced by means other than the requested disclosure. (*Ripskis, supra,* 746 F.2d at p. 3.)

Under the employment contract, Dr. Amador's evaluations were based on her "overall performance" in addition to her personal performance goals. The

---

[4] Versaci cites *New York Times Co. v. Superior Court, supra,* 52 Cal.App.4th 97, for the proposition that under the Act "embarrassment is insufficient to prevent disclosure of records." In that case, the court held the public interest in disclosure of the names of police officers who fired shots at citizens outweighed the officers' interest in confidentiality, and "[f]ear of possible opprobrium or embarrassment is insufficient to prevent disclosure." (*Id.* at p. 104.) The case does not concern the requested disclosure of an employee's personal performance goals, and " 'cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

[5] We asked the parties to submit supplemental briefing on the mootness issue. They complied, and we have taken their responses into consideration.

District produced evidence that in open session the Board adopted numerous documents under which the District is run, including a "Strategic Plan," "Annual Implementation Plans" and "Board Goals," and the documents are available to the public. Further, as the District's Superintendent, Dr. Amador was "fully accountable to the Board and to the public for achieving the goals" set forth in those documents. Without resorting to her personnel file, a substantial amount of information is available to assist the public in assessing the trustees' conduct vis-à-vis Dr. Amador.

Additionally, we conclude Dr. Amador has a reasonable expectation of privacy in her personal performance goals. (See *Teamsters Local 856 v. Priceless, LLC, supra,* 112 Cal.App.4th at p. 1516 [reasonable expectation of privacy in salary details contained in employees' personnel files precluded disclosure under the Act].) She submitted a declaration that stated, "[o]ne of my priorities in . . . negotiation [of my contract] was to assure that my performance evaluation, to include my personal performance goals and objectives . . . , [was] kept confidential and discussed only in closed session meetings of the Boards. . . . I have never and would never agree to have any component of my performance evaluation released to the public."

It is true that "a mere promise of secrecy cannot always shield a public record from disclosure." (*Teamsters Local 856 v. Priceless, LLC, supra,* 112 Cal.App.4th at pp. 1513–1514.) The District, however, produced evidence that an employee's personal performance goals are customarily kept confidential. Dr. Amador's declaration stated she had been in the education field since 1978 and no school she ever worked for "released to the public *any part of* an employee's personal performance evaluation." (Italics added.) Dr. Jack Miyamoto, the District's Assistant Superintendent/Vice President of Human Resource Services and Affirmative Action, submitted a declaration that stated "personal goals and objectives sometimes include areas of the specific employee's work performance which require improvement," and, "I have never in my career released to the general public any component of any employee's performance evaluation without consent." " 'A "reasonable" expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms.' " (*Id.* at pp. 1515–1516.)

Moreover, the Brown Act expressly authorizes a public agency to meet in closed session regarding the consideration of "the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee." (Gov. Code, § 54957, subd. (b)(1).) The "underlying purposes of the 'personnel exception' are to protect the employee from public embarrassment and to permit free and candid discussions of personnel matters by a local governmental body." (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947,

955 [196 Cal.Rptr. 45].) Under the employment contract, Dr. Amador's personal performance goals were an integral part of the confidential evaluation process.

■ "There is an inherent tension between the public's right to know and the public interest in protecting public servants, as well as protecting private citizens, from unwarranted invasion of privacy. [Citation.] On certain occasions, the public's right to disclosure must yield to the privacy rights of governmental agents." (*New York Times Co. v. Superior Court, supra,* 52 Cal.App.4th at p. 100.) We conclude this is such a case, as Dr. Amador's privacy interest in her entire evaluation process including her personal performance goals outweighs the public's minimal interest in the matter.[6]

## DISPOSITION

The petition is denied. Costs in this proceeding are awarded to the District.

Haller, J., and McDonald, J., concurred.

A petition for a rehearing was denied April 11, 2005, and petitioner's petition for review by the Supreme Court was denied June 8, 2005.

---

[6] Versaci does not contend the trial court erred by not reviewing Dr. Amador's personal performance goals in camera before ruling they are not subject to disclosure under the Act. Accordingly, we do not consider the issue. Further, given our holding we are not required to reach Versaci's contention that section 6255 is inapplicable.