Filed 4/30/21  Contest Promotions v. City and County of San Francisco CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CONTEST PROMOTIONS, LLC,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant, Cross-complainant and Respondent. | A157991<br><br>(City & County of San Francisco Super. Ct. Nos. CPF16514771, CGC15547630) |

This is an appeal from judgment in what is essentially a breach of contract case after the trial court granted the motion for summary judgment filed by defendant/cross-complainant City and County of San Francisco (City) and dismissed as moot the cross-motion for summary judgment filed by plaintiff/cross-defendant Contest Promotions, LLC (Contest Promotions). The underlying contract is a settlement agreement entered into by the parties in July 2014 to resolve Contest Promotions's federal court claims regarding the constitutionality of certain ordinances in the City's Planning Code that permitted on-site "Business Signs" but prohibited off-site "General Advertising Signs" (hereinafter, Settlement Agreement).  Enforcement of these ordinances had resulted in approximately 80 notices of violation for signs erected by Contest Promotions.

1

Shortly after the Settlement Agreement was executed, the City amended its Planning Code definition of Business Sign to, among other things, restrict the permissible dimensions of signs erected on premises at which a number of businesses, services, industries, or activities are conducted, or commodities are sold. Contest Promotions sued for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief, alleging the City made an unconditional promise under the Settlement Agreement not to amend the regulatory definition of Business Sign. The City countersued for breach of contract and declaratory relief.

Ruling in the City's favor on summary judgment, the trial court interpreted the Settlement Agreement to permit the City's postsettlement Planning Code amendment. We agree with this interpretation and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Contest Promotions promotes and operates contests in which prospective contest participants are invited to enter various businesses to complete application materials for promotional sweepstakes. To this end, Contest Promotions erects signs on the exterior building walls of these businesses on which it affixes posters representing that, inside the building, the businesses, commodities, services or other activities depicted on the posters, as well as related prizes, are being sold or offered. A small placard on these signs directs the viewer to enter the building for more information.

The City regulates the placement of business-related signage in its territory under its Planning and Building Codes. Generally speaking, article 6 of the San Francisco Planning Code prohibits off-site "General

Advertising Signs" but permits on-site "Business Signs."[1]  The City initially issued permits to Contest Promotions to erect its signage on buildings throughout the City.  However, beginning in 2007, the City issued Contest Promotions about 80 notices of violation on the grounds that its signs violated the ban on General Advertising Signs under article 6.  The notices included a demand to obtain a building permit to remove or correct the offending signs, to seek reconsideration, or to face fines accruing at a rate of $1,000 to $2,200 per day.

Contest Promotions requested reconsideration of one such notice of violation relating to a sign erected at 1350 Howard Street, and the matter went before an administrative law judge (ALJ).  On February 12, 2010, the ALJ issued a decision finding that Contest Promotions's sign was an illegal off-site General Advertising Sign.  Contest Promotions did not seek judicial review of that decision.

## I.     *Contest Promotions's First Federal Lawsuit.*

On September 2, 2009, before the ALJ's decision was issued, Contest Promotions sued the City in the United States District Court for the Northern District of California (district court), challenging the constitutionality of the City's ordinances prohibiting its signage (to wit, sections 602.3 and 602.7).  (See *Contest Promotions, LLC v. City & County of San Francisco* (N.D.Cal. May 10, 2010, 3:09-cv-04434-SI) 2010 U.S.Dist. Lexis 56088.)

---

[1] In 2002, San Francisco voters passed Proposition G, banning new general advertising signs within city limits, but did not affect the legality of on-site signs, which are permissible so long as the owner acquires a permit from the City.  This ban was codified in section 611, subdivision (a) of the San Francisco Planning Code.  Unless otherwise stated, all citations herein are to the San Francisco Planning Code.

3

In 2010, the district court granted preliminary injunctive relief to Contest Promotions after finding that it had raised viable constitutional arguments, including that the language in section 602.3 defining "Business Sign" was unconstitutionally vague.[2] (See *Contest Promotions, LLC v. City & County of San Francisco, supra*, 2010 U.S.Dist. Lexis 56088.) The Ninth Circuit affirmed this ruling in a nonpublished decision. (*Contest Promotions, LLC v. City of San Francisco* (2011) 429 Fed.Appx. 669, 670.)

## II. *Settlement Negotiations and Agreement.*

Beginning in 2013, the parties negotiated a resolution of their signage dispute. After much back and forth, in early 2014, the parties' agreement was memorialized in the Settlement Agreement.

### A. Overview of the Settlement Agreement.

Pursuant to paragraph 1 of the Settlement Agreement, the City agreed to recognize Contest Promotions's signs as Business Signs for purposes of the Planning Code and its permitting process so long as the signs conformed to all requirements applicable to Business Signs under article 6 of the Planning Code. Contests Promotions, in turn, agreed under paragraph 2(a) to submit permit applications to the Planning Department for each of its existing signs within 270 days of the Settlement Agreement's operative date. Contest Promotions also agreed under paragraph 9 to pay the City a total of $375,000

---

[2] The then-current version of section 602.3 defined "Business Sign" as " '[a] sign which directs attention to a business, commodity, service, industry, or other activity which is sold, offered, or conducted, *other than incidentally*, on the premises upon which such sign is located, or to which it is affixed.' " In ruling on the City's motion for judgment on the pleadings, the district court found that Contest Promotions had alleged sufficient facts to state claims for unconstitutionality based on unbridled discretion and vagueness with respect to the phrase "other than incidentally." (*Contest Promotions, LLC v. City & County of San Francisco, supra*, 2010 U.S.Dist. Lexis 56088 at pp. *11–*12, *15–*17, italics added by *Contest Promotions*.)

4

(consisting of $150,000 paid within five days of the Settlement Agreement's operative date plus 24 monthly payments of $9,375 starting 30 days after its operative date.)[3]

Within 10 days after Contest Promotions's payment of the initial $150,000 amount, the parties agreed to file a stipulation for dismissal of the federal lawsuit in its entirety, and Contest Promotions agreed to withdrawal of its pending requests for reconsideration.

Further, the parties agreed in paragraph 15 that the "Settlement Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of the State of California."

### B.    Defined Terms in the Settlement Agreement.

The following relevant definitions were set forth.

1. "**Business Sign:**  A sign that meets the definition of a Business Sign *as set forth in Section 602.3 of the City's Planning Code*."[4]  (Italics added.)

2. "**Category A Sign:**  A Business Sign that directs attention to the businesses, commodities, services, industries or other activities which are sold, offered or conducted on the premises upon which such sign is located, or to which it is affixed.  If multiple businesses, commodities, services, industries, or other activities are depicted on such Business Sign, to be

---

[3] Paragraph 9 further provided that the parties were to bear their own costs and fees associated with the ongoing litigation and the preparation of the Settlement Agreement.  Although not directly stated in the Settlement Agreement, the $375,000 payment appears to be based on the amount of outstanding fines Contest Promotions owed for the notices of violation issued by the City.

[4] At that time, section 602.3 defined " 'Business Sign' as 'a sign which directs attention to a business, commodity, service, industry or other activity which is sold, offered, or conducted, other than incidentally, on the premises upon which such sign is located, or to which it is affixed'."

5

deemed a Category A Sign, each such activity must be offered on the premises upon which the Business Sign is located, or to which it is affixed."

3. "**Category B Sign:** A Business Sign that directs attention to businesses, commodities, services, industries or other activities for each of which one or more Related Prizes are offered in a Sweepstakes conducted on the premises. If multiple businesses, commodities, services, industries, or other activities are depicted on such Business Sign, to be deemed a Category B Sign, each such activity must have a Related Prize in the Sweepstakes conducted on the premises. . . ."

C.    **Key Terms of the Settlement Agreement.**[5]

Paragraph 1. "**Classification of Signs**[:] [¶] The Parties agree and acknowledge that Category A Signs and Category B Signs erected by Contest Promotions within the City are and shall be deemed Business Signs for all purposes of the Planning Code, including but not limited to the filing, processing, and approval of permits by and with the Planning Department, *so long as they are consistent with the dimensional, locational, and other requirements applicable to Business Signs under Article 6 of the Planning Code.*"

Paragraph 2(c). "The Planning Department shall not withhold the issuance of any sign permits sought by Contest Promotions *so long as the Planning Department reasonably determines that the permit application and the sign to which it relates meet and satisfy the requirements of the Planning Code and this Settlement Agreement.*"

---

[5] For ease of reference, where the interpretation of specific language in the Settlement Agreement is the subject of dispute on appeal, the language is italicized.

Paragraph 3. "**Compliance with Applicable Codes**[:] [¶] For each sign erected by Contest Promotions within the City, Contest Promotions shall comply with all applicable provisions of the city's Charter, ordinances, administrative bulletins, and all other written regulations *in effect at the time the permit for the subject sign is issued* ('**Applicable Local Laws**') including, without limitation, applicable provisions of the Planning Code, the Building Code, the Electrical Code and the Public Works Code."

Contest Promotions and the City's planning director executed the Settlement Agreement in January 2014 and April 2014, respectively. On July 15, 2014, the City's board of supervisors finally approved the Settlement Agreement. The mayor then signed the approving ordinance the next day.

## III.   *The City's Amendment of Section 602.3.*

On July 15, 2014, the same day the board of supervisors approved the Settlement Agreement, two individual supervisors introduced an "urgent" resolution to amend the definition of Business Sign in section 602.3 (as it then provided). This resolution was ultimately adopted as a permanent measure by the City. Effective August 7, 2014, section 602.3 was amended as follows:[6] " '**BUSINESS SIGN**. A sign which directs attention to [a] <u>the primary</u> business, commodity, service, industry or other activity which is sold, offered, or conducted[, other than incidentally,] on the premises upon which such sign is located, or to which it is affixed. Where a number of <u>businesses, services, industries, or other activities are conducted on the premises, or a number of</u> commodities[, with different brand names or symbols] are sold on the premises, up to 1/3 of the area of a business sign, or 25 square feet of sign area, whichever is the lesser, may be devoted to the

---

[6] Newly added language is underlined, and deleted language is placed in brackets.

7

advertising of one or more of those <u>businesses,</u> commodities<u>, services, industries, or other activities</u> by brand name or symbol as an accessory function of the business sign, provided that such advertising is integrated with the remainder of the business sign, and provided also that any limits which may be imposed by this Code on the area of individual signs and the area of all signs on the property are not exceeded.  <u>The primary business, commodity, service, industry, or other activity on the premises shall mean the use which occupies the greatest area on the premises upon which the business sign is located, or to which it is affixed</u>'."[7]

When Contest Promotions thereafter submitted permit applications for its inventory of 35 signs in accordance with paragraph 2(a) of the Settlement Agreement, the City denied them, citing newly amended section 602.3's requirement that "[a]ny accessory business activities, such as the operation of contests . . . , must be limited to not more than 1/3 of the area of the sign face or 25 square feet, whichever is the lesser."[8]

## IV.  *This Lawsuit.*

On August 26, 2015, Contest Promotions filed a civil action in the Superior Court of the City and County of San Francisco, asserting a variety of constitutional and common law claims, including violation of the state and federal contracts clauses, promissory estoppel and breach of contract (hereinafter, Case No. CGC-15-547630).[9]  On February 9, 2016, Contest

---

[7] The amendment thus clarified that the 25-square-foot or 1/3-surface-area restriction applied to all nonprimary activities on the premises (including contest sweepstakes) and not just to products sold on the premises.

[8] The City cited some of these 35 signs for problems in addition to their noncompliance with the Business Sign definition.

[9] On January 8, 2015, Contest Promotions filed another federal lawsuit against the City, challenging the validity of its amendment of section 602.3

8

Promotions then filed a verified petition for writ of mandate and complaint for declaratory, injunctive, and monetary relief (hereinafter, Case No. CPF-16-514771). These two cases were consolidated on July 28, 2016, with Case No. CPF-16-514771 designated the lead case.

On April 21, 2017, the City filed a cross-complaint for breach of contract and declaratory relief.

On June 6, 2018, Contest Promotions filed the operative fourth amended complaint (FAC). This followed, among other things, the City's removal of the case to federal court, the federal court's dismissal of the lone federal claim and remand back to state court, and the City's partially successful demurrer.[10] The FAC asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief.

On December 21, 2018, the City requested that the court dismiss without prejudice the breach of contract claim in its cross-complaint. The parties thereafter filed cross-motions for summary judgment focused on the sole issue of the Settlement Agreement's construction and submitted a joint stipulated statement of material facts to the court.

On March 26, 2019, following a contested hearing, the trial court granted the City's summary judgment motion and took Contest Promotions's motion off calendar as moot. In so ruling, the trial court found that the City did not make a specific promise to Contest Promotions to extend it "any sort

_____

under the United States Constitution. This lawsuit was dismissed in a ruling subsequently affirmed by the Ninth Circuit Court of Appeals.

[10] In an April 12, 2017 order, the trial court sustained the City's demurrer without leave to amend as to Contest Promotions's claims for writ of mandate and declaratory relief based on alleged violation of the contracts clause, due process relief from the accrual of penalties, and inverse condemnation.

9

of particular regulatory treatment," noting that paragraph 3 of the Settlement Agreement "makes it clear that plaintiff's obligations may change based on successor rules." Further, based on the absence of any specific contractual obligation, the court rejected Contest Promotions's claim for breach of the covenant of good faith and fair dealing as meritless and superfluous. Judgment was entered in the City's favor on May 1, 2019, prompting this timely appeal.

## DISCUSSION

Challenging summary judgment in the City's favor, Contest Promotions contends the trial court misinterpreted the Settlement Agreement to find that the City was permitted to amend section 602.3 in order to rewrite the definition of Business Sign. Alternatively, Contest Promotions contends that, even if the trial court correctly interpreted the Settlement Agreement as permitting the City's amendment of section 602.3, the amendment nonetheless violated the Agreement's implied covenant of good faith and fair dealing.

### I. *Standard of Review.*

We review an order granting summary judgment de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) The moving defendant bears the initial burden to show the cause of action has no merit, meaning "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists . . . ." (*Ibid.*)

We "independently assess the correctness of the trial court's ruling by applying the same legal standard as the trial court in determining whether

10

any triable issues of material fact exist, and whether the defendant is entitled to judgment as a matter of law." (*Rubin v. United Air Lines, Inc.* (2002) 96 Cal.App.4th 364, 372.) In making these assessments, we strictly construe the moving party's evidence and liberally construe the evidence favoring the opposing party, resolving all doubts in the opposing party's favor. (*Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1192 (*Avidity*).) We affirm an order granting summary judgment if it is legally correct on any ground raised in the trial court. (*Ibid*.)

## II. *Principles of Contract.*

The issues on appeal hinge entirely on construction of the Settlement Agreement. "As a contract, [the Settlement Agreement] ' "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636; [citation].) The intention of the parties must be first determined from the language of the contract itself. (Civ. Code, § 1638; [citation].) However, where the language of the contract is ambiguous, it is the duty of the court to resolve the ambiguity by taking into account all the facts, circumstances and conditions surrounding the execution of the contract. (Civ. Code, § 1647; [citation].) In resolving ambiguity, the court may consider not only the express, but the implied terms of the contract as well.' [Citations.]" (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1252.)

"In California there is an implied covenant of good faith and fair dealing in every contract, which imposes a duty upon the party to the contract to perform faithfully and not to deprive the other party of the benefits of the contract. . . . 'This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the

11

duty to do everything that the contract presupposes that he will do to accomplish its purpose.' ([Citations]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 743, p. 674.)" (*Floystrup v. City of Berkeley Rent Stabilization Board* (1990) 219 Cal.App.3d 1309, 1318.)

On appeal, the reviewing court independently construes the parties' contract and any competent extrinsic evidence that is not in conflict. (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.) " 'When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction [following a trial] will be upheld if it is supported by substantial evidence.' " (*Ibid.*)

## A. Breach of Contract Claim.

### 1. *Reasonably construed, the Settlement Agreement allowed the City to amend the definition of Business Sign.*

Contest Promotions contends that to read the Settlement Agreement as allowing the City to amend the Business Sign definition in section 602.3, the trial court unreasonably inserted language that is not there and reduced some of its actual language to mere "surplusage." As Contest Promotions correctly notes, "[t]he court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there. [Citation.] Courts will not add a term about which a contract is silent." (*Levi Strauss & Co. v. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486 (*Levi Strauss*).)

Contest Promotions identifies three ways the trial court misinterpreted the Settlement Agreement. The court: (1) rewrote the defined term "Business Sign" so that it was no longer expressly tethered to section 602.3 as it existed at the time of contracting; (2) wrote out of paragraph 1 the qualifiers to the phrase "so long as" (i.e., "the dimensional, locational, and

12

other requirements applicable to Business Signs under Article 6 of the Planning Code") in order to broaden the paragraph's meaning and eliminate the City's unconditional promise that signs meeting the requirements of the Settlement Agreement "are" and "shall be deemed" Business Signs; and (3) wrote out of paragraph 2(c) the phrase "and this Settlement Agreement," which requires compliance with both the Settlement Agreement and section 602.3 as it then existed. We reject these contentions on several grounds.

First, reasonably construed, the defined term "Business Sign" is not, as Contest Promotions claims, specifically tethered to section 602.3 as it existed at the time of contracting. Rather, the definition itself is silent as to what version of section 602.3 applies. However, any resulting ambiguity is fully resolved by paragraph 3, which expressly states that with respect to each sign erected, "Contest Promotions shall comply with all applicable provisions of the [Planning Code] *in effect at the time the permit for the subject sign is issued* ('Applicable Local Laws') . . . ." (Italics added, boldface omitted.) Further, as paragraph 15 makes clear, we must construe the Settlement Agreement "as a whole in accordance with its fair meaning and in accordance with the laws of the State of California"—meaning we read these clauses together, such that the relevant version of 602.3 in the Business Sign definition is the version in effect at the time of permitting per paragraph 3. "Courts will not strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18–19.)

Attempting to avoid paragraph 3, Contest Promotions claims the Settlement Agreement incorporated by reference the then-current version of section 602.3, making it part of the Settlement Agreement as if recited verbatim therein. Not so. Whether a document is incorporated into a contract depends on the parties' intent at the time of contracting, and their

13

intent "must, in the first instance, be ascertained objectively from the contract language. [Citation.] . . . The applicability of Civil Code section 1642[11] is a question of fact for the trial court, and the appellate court will affirm the court's resolution if it is supported by substantial evidence." (*Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 814–815.) The Settlement Agreement contains no language that objectively indicates the parties' intent to incorporate the version of section 602.3 in effect at the time of contracting. To the contrary, paragraph 3 contains express language indicating the parties' intent to apply the version of the ordinance in effect at the time that Contest Promotions seeks a permit for a particular sign. Again, these terms, including paragraph 15, undermine Contest Promotions's incorporation-by-reference argument.

We also reject Contest Promotions's argument that interpreting the Settlement Agreement in this manner improperly favors the general language in paragraph 3 over specific language in other parts of the Settlement Agreement that (1) defines Business Sign by reference to section 602.3 and (2) acknowledges under paragraph 1 the parties' agreement that Category A and Category B Signs "shall be deemed Business Signs for all purposes . . . ." (See Civ. Code, §§ 1650 ["Particular clauses of a contract are subordinate to its general intent"], 3534 ["Particular expressions qualify those which are general"]; accord, Code Civ. Proc., § 1859.) Given paragraph 15's mandate that we construe the Settlement Agreement as a whole, we find no basis for subordinating paragraph 3 to paragraph 1, the Business Sign definition, or any other clause. This is particularly so given

---

[11] "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.)

that the latter three clauses do not identify which version of the City's written ordinances or regulations apply to the Settlement Agreement. Rather, they are silent on the issue, which renders paragraph 3, not paragraph 1 or the definition clause, the "particular clause" within the meaning of Civil Code sections 1650 and 3534. (See *Levi Strauss, supra*, 184 Cal.App.3d at p. 1486 ["Courts will not add a term about which a contract is silent"]; cf. *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 834 (*Kashmiri*) ["when a general and a particular provision are *inconsistent*, the particular and specific provision is paramount to the general provision" (italics added)].)

Next, we disagree with Contest Promotions that the City made an "unconditional promise" under paragraph 1 to treat signs meeting the requirements of the Settlement Agreement as Business Signs. Paragraph 1 expressly states that Contest Promotions's signs "shall be deemed" Business Signs "so long as they are consistent with the dimensional, locational, and other requirements applicable to Business Signs under Article 6 of the Planning Code." This clause speaks to the "1/3" or "25 square feet" dimensional requirement in the amended version of section 602.3 that applies to advertising on signs, such as Contest Promotions's signs, that are erected on premises where a number of businesses, services, industries, or other activities are conducted. On the other hand, paragraph 1 contains no language restricting the meaning of the phrase "Article 6 of the Planning Code" to the version of article 6 in effect at the time of contracting.

Finally, we address Contest Promotions's argument that, under the trial court and City's interpretation, paragraph 2(c) is morphed from a commitment to recognize its signs as Business Signs so long as they comply with the Settlement Agreement and section 602.3 into "a term the City could

15

vitiate without consequence by amending its definition of 'Business Sign.' "
This is a rehashing of Contest Promotions's argument—already rejected—
that the Settlement Agreement's definition of Business Sign is specifically
tethered to the version of section 602.3 in effect at the time of contracting.
Paragraph 2(c) refers generally to compliance with "the applicable provisions
of the Planning Code . . . ." As we explained, under paragraph 3, each of
Contest Promotions's signs must comply with all applicable local laws,
including the "applicable provisions of the Planning Code" "in effect at the
time the permit for the subject sign is issued," rather than those in effect at
the time of contracting.

Paragraph 3 of the Settlement Agreement also renders plaintiff's
authority, *United States v. Winstar Corp.* (1996) 518 U.S. 839 (*Winstar*),
inapposite. There, the relevant contracts between the federal government
and several savings and loan associations (thrifts) included an agreement to
count " 'supervisory goodwill' " toward the capital reserve requirements
imposed by regulators on the thrifts. (*Id*. at pp. 848–849, 861–862 (plur. opn.
of Souter, J.).) Unlike here, the contracts specifically incorporated
regulations in effect at the time the parties' agreements became effective.[12]
(*Id*. at pp. 865, 867.) Thus, because the government expressly contracted to
assume the risk of regulatory change, the government was liable for damages

---

[12] For example, one such contract provided: " 'If there is a conflict
between [the governing] regulations and the Bank Board's resolution or
action [approving or adopted concurrently with this Agreement], the Bank
Board's resolution or action shall govern. For purposes of this section, *the
governing regulations and the accounting principles shall be those in effect on
the Effective Date or as subsequently clarified, interpreted, or amended by the
Bank Board or the Financial Accounting Standards Board ('FASB'),
respectively, or any successor organization to either*.' " (*Winstar, supra*, 518
U.S. at p. 865 (plur. opn. of Souter, J.), italics added.)

incurred by the thrifts as a result of legislation enacted subsequent to the parties' contract. (*Id.* at pp. 843, 910; accord, *Pure Wafer, Inc. v. City of Prescott* (9th Cir. 2017) 845 F.3d 943, 947, 956–957 (*Pure Wafer*) [the city breached its specific promise not to raise Pure Wafer's "sewer usage fees" above a certain rate so long as the fluoride content in the company's effluent remained at or below 100 mg/L, by enacting an ordinance banning industrial users such as Pure Wafer from discharging waste water containing in excess of 16.3 mg/L of fluoride into any public wastewater treatment facility entry point].)

More on point is the case relied upon by the City and the trial court (*Avidity, supra*, 221 Cal.App.4th 1180). There, the reviewing court rejected a lumber company's argument that the state promised the company a minimum harvest level for its timber after concluding "there is no explicit agreement to that effect in any of the documents making up the [parties'] Agreement." (*Id.* at p. 1202.) In so concluding, the Court observed: "The parties were sophisticated players with knowledgeable legal counsel engaged in high-profile negotiations. We have no doubt they knew how to draft a provision assuring a minimum harvest level and foreclosing any further regulatory review if that was their mutual intent. That they did not draft such a provision is a clear indication there was no mutual agreement on the issue, and we will not cobble together such an agreement from miscellaneous provisions in the documents tendered in this action." (*Ibid*.)

We reach the same conclusion here. Both parties are sophisticated players that have been represented by knowledgeable legal counsel at every stage of their dispute. The length and intensity of their negotiations reflect these facts. Under these circumstances, we decline to find any mutual agreement by the parties to lock in the then-current definition of Business

17

Sign under section 602.3 when, in the final version of the Settlement Agreement, the parties (1) drafted paragraph 3 to provide for application of "regulations in effect at the time the permit for the subject sign is issued . . . including, without limitation, applicable provisions of the Planning Code"; and (2) drafted paragraph 1 without any language tethering section 602.3 to the version of the provision then in effect.[13] (See *Service Employees Internat. Union, Local 99 v. Options—A Childcare & Human Services Agency* (2011) 200 Cal.App.4th 869, 879 [when interpreting a contract so as to give effect to the parties' mutual intention at the time the contract was formed, we "ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates"].)

        2.    *Extrinsic evidence bolsters our interpretation.*

We agree with the trial court that while it is unnecessary to go beyond the Settlement Agreement to ascertain the parties' intention to apply the local laws in effect at the time of permitting rather than in effect at the time of contracting, the extrinsic evidence nonetheless bolsters this conclusion. Undisputed facts show that beginning as early as 2011 and lasting throughout the parties' settlement negotiations, an amended version of section 602.3 was pending before the board of supervisors. In particular, the

---

[13] Given our conclusion that the City did not agree to lock in the then-current definition of Business Sign under section 602.3, we need not decide whether the City's signage laws involve the exercise of its police powers, which, as the City noted at oral argument, it could not have agreed to forfeit in the future. (See *Avco Community Developers, Inc. v. South Coast Regional Com.* (1967) 17 Cal.3d 785, 800 ["it is settled that the government may not contract away its right to exercise the police power in the future"]; *County Mobilehome Positive Action Com., Inc. v. County of San Diego* (1998) 62 Cal.App.4th 727, 738–741.)

proposed amendment included a clarification that the 1/3 or 25-square-foot dimensional requirement applied not just to items "sold" on the premises but also to "services, or other activities . . . offered or conducted, other than incidentally," on the premises—the very regulatory change about which Contest Promotions complains. (Italics omitted.)

Moreover, as noted above, Contest Promotions successfully obtained preliminary injunctive relief in federal court based on its allegations of certain constitutional infirmities in the then-current version of section 602.3, including the vagueness of the provision's reference to "services, or other activities . . . offered or conducted, other than incidentally," on the premises. As the City notes, Contest Promotions must certainly have recognized the likelihood that the ordinance would be amended.

Simply put, if Contest Promotions wanted to secure a promise from the City to apply a particular regulatory definition of Business Sign in order to resolve their dispute, Contest Promotions should not have signed the Settlement Agreement as it was drafted.

3. *Our interpretation does not yield absurd results or render the Settlement Agreement illusory.*

Contest Promotions claims the trial court's interpretation of the Settlement Agreement rests on the "absurd" propositions that the company would forfeit its federal claims "for a less than $600,000 discount on penalties under an ordinance a federal court already concluded was unconstitutionally vague" and would give the City "carte blanche to amend its laws without consequence and then resume its quest to drive Contest out of business." According to Contest Promotions, the very point of the Settlement Agreement was to end the parties' dispute over whether its signs qualified as Business Signs, not to extend their dispute indefinitely based on the City's amendatory powers. Accepting that the City may change its laws, Contest Promotions

19

nonetheless argues that the City cannot escape responsibility for its contractual obligations by changing its laws without paying damages for the harm its breach caused. (See *Winstar, supra*, 518 U.S. at pp. 881–882 (plur. opn. of Souter, J.) [while the government cannot contractually agree not to exercise a sovereign power, it can contractually agree to pay the other party's damages if it does exercise such power].)

"The interpretation of a contract 'must be fair and reasonable, not leading to absurd conclusions.' [Citation.] 'A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.' (Civ. Code, § 1643.)" (*Kashmiri, supra*, 156 Cal.App.4th at p. 842.) The trial court's interpretation in this case respected these principles.

As an initial matter, we disagree with Contest Promotions that the district court "concluded" section 602.3 was unconstitutionally vague. The district court made only a pretrial finding when partially denying the City's motion for judgment on the pleadings that Contest Promotions had stated valid constitutional claims for vagueness and unbridled discretion. (*Contest Promotions, LLC v. City & County of San Francisco, supra*, 2010 U.S.Dist. Lexis 56088, at pp. *15–*16.)

Moreover, Contest Promotions ignores the full scope of benefits it received under the Settlement Agreement. As the trial court found, the City sought nearly a million dollars in fines generated by its notices of violation yet agreed to mutually resolve all claims and to accept only $375,000 from Contest Promotions, most of it payable on a monthly basis rather than due in full. Further, by defining Category B Signs and including them as a legitimate type of Business Sign, the City for the first time recognized that

20

Contest Promotions's sweepstakes operations qualify as on-site activity under the Planning Code. The subsequent amendment of section 602.3 added dimensional restrictions (among other things) to the Business Sign definition but did not undermine the City's basic acceptance of Category B Signs.

These facts distinguish this case from plaintiff's cases, *Winstar* and *Pure Wafer*, where the government knew the bargained-for regulatory environment was necessary for the other party to maintain a viable business and specifically agreed to bear the financial risk that regulatory changes would make compliance more costly. (See *Pure Wafer, supra*, 845 F.3d at p. 958 ["Much like the financial institutions in *Winstar*, '[i]t would . . . have been madness for [Pure Wafer] to have engaged in these transactions with no more protection than the Government's reading would have given them, for the very existence of their institutions would then have been in jeopardy from the moment their agreements were signed.' 518 U.S. at 910, 116 S.Ct. 2432 (plurality opinion)"].) Here, the challenged regulatory action did not render Contest Promotions's business nonviable. Nor did it render the City's promises illusory.

## B. Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Last, Contest Promotions contends that, even assuming the City was authorized to amend section 602.3, the City was nonetheless bound by an implied covenant of good faith and fair dealing not to frustrate Contest Promotions's bargained-for contract rights.

" 'The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.' [Citation.] 'In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not

21

technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.' [Citation.]" (*Avidity, supra*, 221 Cal.App.4th at p. 1204.)

"'The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another.' [Citation.] In such cases, the covenant will be implied when one party is given absolute discretion over whether or not to perform. [Citation.] The benefits of the contract in such cases equal the performance of the other party's obligations under the contract. Courts imply a covenant of good faith and fair dealing in such contracts to create a binding contract in the face of a claim that the contract is illusory. [Citation.] However, no covenant of good faith and fair dealing is imposed where the contract is adequately supported by adequate consideration regardless of the discretionary power." (*Avidity, supra*, 221 Cal.App.4th at p. 1206.)

Nor does this implied covenant provide a basis for imposing substantive terms and conditions on a contracting party beyond those actually agreed upon: "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot ' "be endowed with an existence independent of its contractual underpinnings." ' [Citation.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.' " (*Guz, supra*, 24 Cal.4th at pp. 349–350.)

Applying these principles here, we find no violation of the implied covenant of good faith and fair dealing. First, notwithstanding the City's discretionary powers to make and amend its laws, as discussed already, the

Settlement Agreement was supported by adequate consideration, including forgiveness of roughly $600,000 that Contest Promotions owed in outstanding fines and recognition of its sweepstakes-related signs as Business Signs. (See pp. 2–7, *ante*.) No covenant of good faith and fair dealing is imposed under these circumstances. (*Avidity, supra*, 221 Cal.App.4th at p. 1206.)

Moreover, the basis of Contest Promotions's claim of a violation of the implied covenant is the City's amendment of section 602.3. Because, as noted, " 'the implied covenant protects only the parties' right to receive the benefit of their agreement' " and in the Settlement Agreement there is no agreement to refrain from amending section 602.3, " 'the implied covenant standing alone cannot be read to impose such a duty.' " (*Guz, supra*, 24 Cal.4th at p. 350.)

Contest Promotions's final claim thus fails.[14]

## DISPOSITION

The judgment is affirmed.

---

[14] On March 31, 2021, counsel for Contest Promotions provided this court with citations to the following new authority: *L.D. Mgmt. Co. v. Gray* (6th Cir. 2021) 988 F.3d 836 and *Reagan Nat. Advertising, Austin v. City of Austin* (5th Cir. 2020) 972 F.3d 696. These cases, which address federal constitutional issues relating to on-site and off-site signage, are not relevant to the state contract law issues raised in this appeal.

 

                           _____

                           Jackson, J.


WE CONCUR:


_____

Petrou, Acting P. J.


_____

Wiseman, J.*


*A157991/Contest Promotions, LLC v. City and County of San Francisco*

---

    * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.